

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2000

# Folger Adam Security v Dematteis/MacGregor

Precedential or Non-Precedential:

Docket 98-2164, 98-2165, 99-1107, and 99-1108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Folger Adam Security v Dematteis/MacGregor" (2000). *2000 Decisions.* Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 20, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-2164, 98-2165, 99-1107, 99-1108

FOLGER ADAM SECURITY, INC.

v.

DEMATTEIS/MACGREGOR, JV;
INSURANCE COMPANY OF NORTH AMERICA;
FIDELITY & DEPOSIT COMPANY OF MARYLAND;
SWISS REINSURANCE AMERICA CORPORATION,
formerly know as North American Reinsurance
Corporation

      DeMatteis/MacGregor, JV;
      Insurance Company of North America;
      Fidelity & Deposit Company of Maryland;
      Swiss Reinsurance America Corporation,
      Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 96-04072, 96-cv-04073)
District Judge: Honorable Charles R. Weiner

Argued: October 1, 1999

Before: MANSMANN, McKEE and STAPLETON,
Circuit Judges.

(Filed: March 20, 2000)


      B. Christopher Lee, Esquire (Argued)
      Jacoby, Donner & Jacoby
      1515 Market Street
      Suite 2000
      Philadelphia, PA 19102

       Counsel for Appellee

      Carl A. Solano, Esquire (Argued)
      Philip G. Kircher, Esquire
      Jacqulynn M. Broughton, Esquire
      Schnader, Harrison, Segal & Lewis
      1600 Market Street
      Suite 3600
      Philadelphia, PA 19103

        Counsel for Appellants

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal, we are asked to decide whether the
affirmative defenses of setoff, recoupment, and other
contract defenses, which arose as a consequence of alleged
defaults under certain contracts with the debtors,
constitute an "interest" under section 363(f) of the
Bankruptcy Code such that a sale of the debtors' assets in
a consolidated Bankruptcy Court auction free and clear,
extinguished such affirmative defenses and effectively
transformed such contract rights into unimpeachable
accounts receivable in the hands of the purchaser. Further,
this appeal raises a question as to whether the creditor
whose affirmative defenses were extinguished by the
Bankruptcy sale received constitutionally adequate notice
such that failure to object would result in a waiver of its
affirmative defenses and its deemed consent to the
transformation of the debtors' contract claims into
unimpeachable accounts receivable.

We find that the affirmative defenses do not constitute an
"interest" for purposes of section 363(f) and, therefore, were
not extinguished by the Bankruptcy sale. A setoff right,

                                    2


however, may only be asserted to the extent the creditor
can prove it actually took the setoff prior to the bankruptcy
filing. Moreover, we find that the notice of the section 363
sale given by the debtors failed to give the creditor notice
that it would lose its defenses and, therefore, was
constitutionally inadequate. Accordingly, we will reverse the
judgment of the District Court and remand for further
proceedings consistent with this opinion.

I.

For the most part, the parties do not dispute the facts.
Folger Adam Security, Inc. ("Folger") instituted the
underlying declaratory judgment action against
DeMatteis/MacGregor Joint Venture ("DeMatteis"), along
with three sureties, Insurance Company of North America,
Fidelity & Deposit Company of Maryland, and Swiss
Reinsurance America Corporation, seeking $370,446.67 in
unpaid "accounts receivable" relating to equipment sold to
DeMatteis for a construction project. Folger acquired
substantially all of the assets of three bankrupt companies
through a bankruptcy auction "free and clear" of all claims

and other interests.[1] The facts leading up to this litigation are set forth below.

The alleged debts that are the basis of Folger's claim against DeMatteis arose from a construction project at the Curran Fromhold Prison in Northeast Philadelphia (the "Northeast Project"). DeMatteis sells and installs security systems for use within prisons. In October 1993, Perini/TriState, the general contractor on the Northeast Project, hired DeMatteis as a subcontractor to supply security equipment for the project. Prior to contracting with DeMatteis, Perini/TriState executed a labor and materialman's bond on the Northeast Project, with Fidelity & Deposit Company of Maryland and Swiss Reinsurance America Corporation (then known as the North American Reinsurance Company) acting as sureties. Insurance

_____

1. In addition to the William Bayley Company and Folger Adam Company, Folger also purchased the assets of a third debtor, Stewart-Dicatur Security Systems, Inc., through the Bankruptcy auction.

3

Company of North America issued a similar subcontractor's bond in favor of DeMatteis.

After contracting with Perini/TriState to supply the security equipment, DeMatteis sought and received

proposals from the William Bayley Company ("Bayley") and the Folger Adam Company ("FAC") (collectively the "Companies" or "Debtors") to supply security hardware and furniture for the Northeast Project. In response to the proposals, DeMatteis sent letters to Bayley and FAC informing them that it intended to issue a purchase order for the equipment. On January 12, 1994, DeMatteis issued a purchase order to FAC for security equipment in the amount of $801,500.[2] DeMatteis also issued a purchase order to Bayley on January 13, 1994, in the amount of $315,900.

Pursuant to the purchase orders, Bayley and FAC began supplying materials and equipment to DeMatteis for the Northeast Project sometime after April 20, 1994. They continued to supply materials and equipment until June 6, 1995 in the case of Bayley, and until December 20, 1995 in the case of FAC. After supplying all the materials, Bayley and FAC claimed that DeMatteis still owed them $310,648 and 59,798.67, respectively. DeMatteis refused to pay the balances due, however, claiming that the Companies had breached their contractual obligations. Specifically, DeMatteis claimed that materials and equipment furnished

by Bayley and FAC were defective, requiring repurchase of missing components and the performance of remedial work. DeMatteis also claimed that materials were delivered late, causing disruption to the project's schedules and a need for "work-arounds."

Bayley and FAC advised DeMatteis that they would try to cure their defective performances. Shortly thereafter, on February 8, 1996, the Companies filed separate petitions for reorganization relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On that same date, Bayley and FAC filed a motion, pursuant to sections 363 and 365 of

_____

2. FAC accepted DeMatteis' purchase order subject to its letter of exception.

4

the Bankruptcy Code, for approval of the sale of substantially all of their assets to Folger which had been newly formed and whose management was comprised of many of the principals from Bayley and FAC. The Notice of Auction and Final Hearing on Motion to Approve the Sale of Substantially All of the Debtors' Assets and Assumption and Assignment of Certain Contracts Pursuant to 11 U.S.C. SS 363 and 365 and Providing for Final Distribution of Proceeds of Sale (the "Notice of Auction"), indicated that the sale was to be "free and clear" of all claims and other "interests" that could be asserted against the Debtors. The Notice of Auction further stated that a list of the Debtors' contracts that were being assumed by and assigned to Folger in the sale pursuant to section 365 of the Bankruptcy Code would be provided on or before February 18, 1996. Although the Debtors' contracts with DeMatteis were specifically excluded from this list, DeMatteis only became aware that Folger was not assuming these contracts some time after the March 7, 1996 bankruptcy auction.3

DeMatteis maintains that although it was listed on an affidavit of service, it did not receive the Notice of Auction from either of the Debtors. In support of this statement, DeMatteis provided the affidavit of M. MacGregor, Project Director for DeMatteis/MacGregor Security Constructors. In his affidavit, MacGregor stated that the official Notice of Auction was never received but, on February 15, 1996, an

_____

3. The Notice of Auction stated that Folger was to file with the Bankruptcy Court, on or before February 18, 1996, a list of those executory contracts and leases that it desired to accept by assignment.

Pursuant to the terms of the notice of auction, on February 16, 1996, Folger filed a Notice of Designation of Executory Contracts and Leases to be Assumed and Assigned to Folger (the "Designation Notice"). Folger did not list any of the DeMatteis contracts with Bayley in the Designation Notice; however, Folger listed two DeMatteis contracts with FAC, one pertaining to the Northeast Project, and the other relating to another project not at issue in this case. Subsequently, on March 7, 1996, the Debtors and Folger filed a Notice of Removal of Designation in which they removed and deleted certain executory contracts previously listed in the Designation Notice. Included among these delisted contracts were the two DeMatteis contracts with FAC. Thus, none of the DeMatteis contracts were assumed and assigned to Folger.

incomplete copy of the notice was received by fax from another party. He further stated that he did not understand the Debtors' accounts receivable to include monies claimed by the Debtors but denied by DeMatteis because of nonperformance of contracts. Because it believed that the disputed amounts were not included among the assets being sold at the bankruptcy auction, DeMatteis did not file an objection to the sale.

At the March 7, 1996 auction, Folger was the sole bidder and, therefore, successfully acquired substantially all of the assets of the Debtors. The Bankruptcy Court approved this sale on March 8, 1996.4

Between March 20 and 22, 1996, DeMatteis completed four proofs of claim which it filed in the Chapter 11 bankruptcy cases, one each with respect to the two projects which form the basis for the claims in this consolidated appeal, and the two others relating to cases pending in other courts. In the proofs of claim, DeMatteis asserted claims for replacement costs, late/incomplete delivery costs, quality problems, third party claims, productivity loss, extended overhead, loss of cash flow and interest paid, warranty costs, and additional bond premium associated with each project. On August 21, 1996, the Debtorsfiled an objection to the proofs of claim filed by DeMatteis, claiming that the March 8, 1996 order approving the sale and asset purchase agreement transferred the Debtors' accounts receivables from DeMatteis to Folger "free and clear" of all rights of setoff, recoupment, counterclaim and other defenses and claims of DeMatteis (the "Omnibus Motion"). DeMatteis contested this assertion, disagreeing with the Debtors' re-characterization of the executory contracts (which were specifically excluded from the sale) as "accounts receivable." Nonetheless, the Bankruptcy Court entered an order on October 10, 1996, disallowing and
_____

4. The Bankruptcy Court entered its approval of the sale in its Order Granting Motion to Approve the Sale of Substantially All of the Debtors' Assets to Purchaser and Assumption and Assignment of Certain Contracts Pursuant to 11 U.S.C. SS 363 and 365 (the "Sale Order.").

6

expunging the proofs of claim objected to in the Omnibus Motion.5

In the meantime, on May 31, 1996, Folger instituted two lawsuits against DeMatteis in the United States District Court for the Eastern District of Pennsylvania asserting breach of contract. In Civil Action No. 96-4072, Folger sought money damages of $310,648, plus interest and costs, from DeMatteis on its contract with Bayley; and in Civil Action 96-4073, Folger sought money damages of $59,798.67, plus interest and costs, from DeMatteis on its contract with FAC. On September 19, 1996, the District Court dismissed the case at No. 96-4072 without prejudice to give the parties an opportunity to seek relief in the Bankruptcy Court. Thereafter, on December 5, 1996, Folger filed with the Bankruptcy Court a Motion for Determination that the March 8, 1996 order of the Bankruptcy Court approving the sale and asset purchase agreement transferred accounts receivable free and clear of all setoffs, defenses, and counterclaims, which DeMatteis opposed. The Bankruptcy Court concluded, however, that it lacked jurisdiction and dismissed Folger's Motion for Determination, advising the parties that the March 8, 1996 order spoke for itself and should be interpreted by the courts in which the accounts receivable claims were pending. After the Bankruptcy Court entered its order on February 13, 1997, the parties agreed to resolve both cases together before the District court on a motion for summary judgment.6

_____

5. On April 9, 1997, the Debtors and DeMatteis entered into a stipulation whereby they agreed that the Bankruptcy Court's October 10, 1996 order disallowing and expunging certain claims against the Debtors would be vacated as to the claims. Thus, the amended joint liquidation plan was not deemed to discharge, bar, enjoin, or otherwise preclude DeMatteis from asserting any defense, including defenses of setoff or recoupment, in any action or proceeding by the Debtors or Folger. Approval of the stipulation agreement was included in the Bankruptcy Court's order confirming the plan. Ultimately, DeMatteis did not recover any money on its proofs of claim against Bayley and FAC because the bankruptcy estate lacked sufficient assets.

6. By stipulation of the parties, No. 96-4073 was placed in suspense at the time the parties sought relief in the Bankruptcy Court. When the

On August 7, 1998, Folger filed a motion for summary judgment requesting that the Court enter judgment in its favor in the amounts prayed for in the complaints ($370,466.67, plus interest and costs), and a grant declaratory judgment pursuant to 28 U.S.C. S 2201 that the Bankruptcy Court's March 8, 1996 order approving the sale and asset purchase agreement transferred the accounts receivables "free and clear" of all rights of setoff, recoupment, counterclaim and other defenses and claims of DeMatteis. The District Court entered an order on November 25, 1998, granting Folger's motion for summary judgment. DeMatteis filed timely appeals in both cases on December 18, 1998, and this court consolidated the two appeals on December 30, 1998.7

We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291. We exercise de novo review over the District Court's grant of summary judgment.

II.

The dispute before us centers around the sale of the Debtors' assets pursuant to section 363(f) of the Bankruptcy Code, which authorizes the trustee, under any one of five prescribed conditions, to sell property of the estate free and clear of "any interest" that an entity has in such property. The term "any interest," as used in section

_____

Bankruptcy Court dismissed Folger's motion, No. 96-4073 was taken out of the suspense file, transferred to the District Court and dismissed without prejudice while the parties prepared the cases for summary judgment. Although Nos. 96-4072 and 96-4073 were not formally consolidated, they have been litigated together from that point forward.

7. After DeMatteis filed its notice of appeal in the two cases, Folger moved for entry of a single money judgment in the two cases that included the total alleged debt plus prejudgment interest and costs, for a total of $448,695.51. The District Court entered judgment in that amount on the following day, January 21, 1999, before DeMatteis had received service of the motion. DeMatteis also took a timely appeal from the judgment entered on January 21, 1999 in both cases and this court consolidated these appeals with the earlier two appeals on February 5, 1999.

363(f), is not defined anywhere in the Bankruptcy Code. DeMatteis contends that the term "any interest" does not include affirmative defenses, such as the right of setoff or

recoupment, or other defenses to breach of contract. On the other hand, the Debtors have asserted, and the District Court has agreed, that the sale of the Debtors' assets was made free and clear of all defenses as well.

In reaching its conclusion, the District Court relied, in part, on the express language of the Sale Order, which provided in relevant part:

> The sale of the Acquired Assets and the assignment of the Assigned Contracts to Purchaser is made free and clear of all liens, mortgages, security interests, encumbrances, liabilities, claims, or any other interests, other than the Assumed Liabilities, whether arising before or after the Petition Date, . . . .

Sale Order, P 3, p. 7 (emphasis added). Although the Sale Order did not explicitly state that the sale included defenses, the District Court nonetheless concluded that "[t]he term `any other interests' necessarily include[d] defenses within its scope." Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, et al., No. 96-4072/4073, slip op. at 6 (E.D. Pa. Nov. 24, 1998).

The District Court found further support for its conclusion in Paragraph 4 of the Sale Order, which stated:

> Any and all creditors of the Debtors are permanently enjoined and restrained from seeking to obtain payment or satisfaction of their claims against the Debtors from the Purchaser or the Acquired Assets, except for and only to the extent of the Assumed Liabilities.

Sale Order, P 4, p. 8. Because this provision specifically enjoined creditors from seeking to obtain payment or satisfaction of their claims, the District Court found the Sale Order was made free and clear of all interests including contract defenses. Folger Adam Security, slip op. at 6. Our review of the case law and other authority requires us to find, contrary to the District Court, that "any interest" under section 363(f) does not include defenses to claims.

9

Under the rule of ejusdem generis, the term"other interest" would ordinarily be limited to interests of the same kind as those enumerated, i.e., "liens, mortgages, security interests, encumbrances, liabilities, [and] claims." Similarly, the canon of construction noscitur a sociis"instructs that a provision should not be viewed `in isolation but in light of the words that accompany it and give [it] meaning.' " Ballay,

et al. v. Legg Mason Wood Walker, Inc., 925 F.2d 682, 688 (3d Cir. 1991) (quoting Massachusetts v. Morash , 490 U.S. 107, 115 (1989)). We noted in Ballay that when construing the meaning of one term in a phrase, the Supreme Court has stated:

> The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to Acts of Congress.

Id. (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961)). With these canons of construction in mind, we turn to the case law construing the term "any interest" under section 363(f).

Courts faced with the task of defining the scope of the term "any interest" have been unable to provide a precise definition. 3 Collier on Bankruptcy P 363.06[1]. Although some courts have narrowly interpreted that phrase to mean only in rem interests in property, see e.g., In re Fairchild Aircraft Corp., 184 B.R. 910, 917–19 (Bankr. W.D. Tex. 1995), vacated on other grounds, 220 B.R. 909 (Bankr. W.D. Tex. 1998), the trend seems to be towards a broader interpretation which includes other obligations that may flow from ownership of the property. 3 Collier on Bankruptcy P 363.06[1] (citing In re Leckie Smokeless Coal Co., 99 F.3d 573, 582 (4th Cir. 1996) (holding that debtor coal mine operators could sell their assets underS 363(f) free and clear of successor liability that otherwise would have arisen under federal statute); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 92–94 (Bankr. E.D. Va. 1995) (holding that S 363(f) permitted sale free and clear of state's depreciation-recapture interest in the debtor's property); In re WBQ Partnership, 189 B.R. 97 (Bankr. E.D. Va. 1995) (holding statutory right to recover depreciation was within

10

"interests" under S 363(f); In re White Motor Credit Corp., 75 B.R. 944 (Bankr. N.D. Ohio 1987) (holding that S 363(f) precluded tort claims against asset purchaser)).

In Leckie, certain employer-sponsored benefit plans (the "plans") objected to the extinguishment of their right to payment of plan liabilities from a successor-in-interest by operation of S 363(f). In determining whether the plans had "any interest in property" within the meaning of S 363(f), the court of appeals in Leckie rejected"an unduly broad interpretation" of that phrase by the district court, which found that simply the right to demand money from the debtor gave rise to an "interest" in the debtor's property

under section 363(f). 99 F.3d at 581. The court of appeals equated such interests to general unsecured claims which have not been recognized by the courts as constituting "interests" within the meaning of section 363(f). Id. (citations omitted).

The court of appeals then noted that:

> ... while the plain meaning of the phrase "interest in such property" suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to in rem interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.

Id. at 582 (citations omitted). The court abstained from defining the term "any interest" categorically, preferring to let future decisional law frame the boundaries of the term.

In concluding that the plans' right to payment constituted an "interest" within the meaning of section 363(f), the court in Leckie was persuaded by the fact that the right of the plans to seek such payment was predicated upon the fact that the assets being sold were used in coal mining operations. Id. Thus, the court's holding seems to suggest that the term "any interest" is intended to refer to obligations that are connected to, or arise from, the property being sold. 3 Collier on BankruptcyP 363.06[1].

In both PKR Convalescent Centers and WBQ Partnership, a state agency had the right under state law to recapture

11

depreciation from operators of nursing homes if the operators realized a gain on the sale of their real property. The statute further provided that if the operators failed to reimburse the state, the agency had the right to pursue the purchasers for the amount owed. In those cases, the Bankruptcy Courts held that because the state agency could be compelled in a legal or equitable proceeding to accept a money satisfaction of its statutory right to depreciation recapture, such interest fell within section 363(f)(5) of the Bankruptcy Code and thus was extinguished by the "free and clear" sale. 8 PKR Convalescent Centers, 189 B.R. at 94; WBQ Partnership, 189 B.R. at 107. Thus, the holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale. PKR Convalescent Centers, 189 B.R. at 94; WBQ Partnership, 189 B.R. at 106. Accordingly, the courts held that the

S 363(f) sale extinguished the state agency's interest in the properties.

The terms "lien" and "setoff" have also been distinguished within the purview of S 363(f). In Marley v. United States, 381 F.2d 738, 743 (Ct.Cl. 1967), the Court of Claims noted that the terms "setoff" and "lien" "connote independent concepts, governed by distinct legal principles."9 Id. at 743.

_____

8. Section 363(f)(5) of the Bankruptcy Code provides essentially that the trustee may sell property of the estate free and clear of any interest in such property if an entity with an interest is such property "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. S 363(f)(5).

9. In Marley, the government had asserted a right of setoff in a contract dispute with the debtor in the Court of Claims prior to the commencement of the bankruptcy proceeding. 381 F.2d 738 (Ct.Cl. 1967). When the trustee applied to sell the debtor's contract claims against the government and the government failed tofile an answer objecting to such application, the bankruptcy court authorized the sale of the contracts free and clear of liens and forever barred the government from asserting any lien against the contracts or proceeds from the sale of such contracts. The contracts were subsequently purchased by Marley who filed an action in the Court of Claims on claims against the government arising out of the purchased contracts. The government filed

12

The court turned to the definitions of these terms to illustrate its point. "Setoff," the court stated, referred to " `situations where both plaintiff and defendant have independent causes of action maintainable against each other in separate actions which can be mutually deducted whenever either one brings a suit against the other.' " Id. (quoting Motto v. United States, 360 F.2d 643, 645 (Ct. Cl. 1966)) (other citation omitted). In contrast, the court noted that a "lien" has been defined as " `a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. It is distinct from the obligation which it secures.' " Id. (citations omitted). Mortgages, security interests, encumbrances and liabilities possess characteristics similar to a lien.

It is clear from the definitions of "lien" and "setoff" that the term "setoff" does not refer to the same type of interest as a "lien." A lien is distinct from the obligation it secures while the same is not true of a right of setoff or recoupment. They have no value separate and apart from a debtor's or purchaser's claim. Thus, under the canons of construction set forth previously, the phrase "any other interests" would not include setoff and recoupment since

those interests are not similar to those enumerated in the Notice of Auction.

Folger equates the affirmative defenses raised by DeMatteis to "claims" in order to subject them to the "free and clear" provision of section 363(f). We find, however, that a defense is not the same as a claim. The Bankruptcy Code sets forth the meaning of the word "claim" as a:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

_____

a counterclaim and asserted the defense of setoff which Marley moved to strike based on the bankruptcy court's sell order. The Court of Claims held that even though the sale order stated that the sale was free and clear of the government's liens and claims, the sale of the contracts was not free and clear of the government's right of setoff since the government had raised that defense in a proceeding instituted prior to the sale of the contracts, a fact of which Marley was aware at the time of the bankruptcy sale. Id. at 743.

> contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;. . .

11 U.S.C. S 101(5)(A). The Bankruptcy Code further provides that "claim" also means a right to an equitable remedy for breach of performance when the breach triggers a right to payment. 11 U.S.C. S 101(5)(B).

Although the Bankruptcy Code's definition of claim is broad, a claim requires an enforceable obligation of the debtor to pay the claimant. Pennsylvania Dep't of Public Welfare v. Davenport, 495 U.S. 552, 559 (1990). Here DeMatteis is not seeking to recover money on an enforceable obligation of Folger, but rather, is asserting only defenses to claims by Folger.10 Indeed, a defense seeks to diminish a claim or to defeat recovery rather than to share in it. BLACK'S LAW DICTIONARY 419 (6th ed. 1990).

In this case, DeMatteis has asserted several contract defenses, including a right of recoupment as well as setoff. Along these lines, a number of courts have held that a right of recoupment is a defense and not a claim in the bankruptcy context. See, e.g., Lee v. Schweiker , 739 F.2d 870, 875 (3d Cir. 1984); In re Lawrence United Corp., 221 B.R. 661, 669 (Bankr. N.D.N.Y. 1998); In re Bram , 179 B.R. 824, 827 (Bankr. E.D. Tex. 1995); In re Izaguirre, 166 B.R. 484, 493 (Bankr. N.D. Ga. 1994). For example, in Lee v. Schweiker, we provided the following explication of the

doctrine of recoupment:

> Recoupment . . . allows the creditor to assert that
> certain mutual claims extinguish one another in
> bankruptcy, in spite of the fact that they could not be
> "setoff" under 11 U.S.C. S 553. The justification for the
> recoupment doctrine is that where the creditor's claim

_____

10. Although DeMatteis filed proofs of claim against the Debtors on
unsecured and non-priority claims relating to the alleged substandard
performances of the Debtors, those proofs of claim are not at issue here.
Insufficient assets existed in the estate for a distribution on these
claims. Moreover, because the Sale Order enjoins DeMatteis and other
creditors from seeking payment from Folger of any claims against the
Debtors, Folger does not have an enforceable obligation to pay such
claims against the Debtors in this or any other litigation.

14

> against the debtor arises from the same transaction as
> the debtor's claim, it is essentially a defense  to the
> debtor's claim against the creditor rather than a
> mutual obligation, and application of the limitations on
> setoff in bankruptcy would be inequitable. See In re
> Monongahela Rye Liquors, 141 F.2d [864,] at 869 [(3d
> Cir. 1944)].

739 F.2d at 875.

Moreover, in In re Lawrence United Corp., the Bankruptcy
Court held that an insurance company's alleged right of
recoupment was not an "interest" in property within the
meaning of section 363(f) and thus was not affected by the
Bankruptcy Court's order authorizing the sale "free and
clear" of all liens and interests. 221 B.R. at 669. In
reaching this conclusion, the Bankruptcy Court opined
that:

> The right of recoupment is not itself a claim and any
> right of recoupment [the insurance company] may have
> does not even fall under the broadest interpretation of
> an "interest" in property. Under common law, the right
> of recoupment is a defense to a debtor's claim against
> the creditor; it is not a mutual obligation.

Id. (citations omitted). The Bankruptcy Court distinguished
the In re Lawrence United Corp. case from In re Leckie
Smokeless Coal Co. and P.K.R. Convalescent Ctrs., Inc.,
cases which both involved an "interest" in property by
virtue of statutes that created a purchaser's liability on the
sale of assets. In In re Lawrence United Corp. , the Court
noted that the dispute over the right to recoupment

centered on what was actually purchased in the "free and clear" sale as opposed to what purchaser liabilities resulted from the purchase. Id. Because any right of recoupment that the insurance company had derived from the collected premiums the debtor owed to it and arose from the same transaction or set of transactions involving the commissions the insurance company owed to the debtor, the court found the sale of the debtor's insurance policy accounts did not extinguish the insurance company's recoupment defense.

In the case before us, Folger argues that In re Lawrence United Corp. is not dispositive for several reasons. It points to three distinguishing factors in that case -- that the insurance company actually filed an objection to the sale, the express language of the contract provided for a right of recoupment, and that the Bankruptcy Court eventually found that the insurance company did not have a right of recoupment against the commissions earned post-petition. But none of these factors informed the court's holding that a right of recoupment is a defense and thus does not fall under the broadest interpretation of "an interest in property." Rather, the court looked to the common law in concluding that the right of recoupment is a defense to the debtor's claim against the creditor. Moreover, we have previously held that an express contractual right is not required to effect a recoupment. In re University Medical Ctr., 973 F.2d 1065, 1080 (3d Cir. 1992).

As noted previously, we have likewise held that the right of recoupment is a defense, not a claim. Lee v. Schweiker, supra. Accordingly, we are not persuaded by Folger's attempts to distinguish Lawrence United Corp. Thus, whether or not DeMatteis properly failed to object to the section 363(f) sale to Folger has no bearing on whether "any other interests" includes defenses such as recoupment and setoff.

Neither the parties nor the District Court has cited a single decision which has held that a defense may be extinguished as a result of a "free and clear" sale. Likewise, we have not found any such authority to exist. We note that all of the cases cited by the District Court in support of its holding that "an interest in property" should be construed broadly to include defenses, involved affirmative claims brought by a creditor; none of these cases raised a defense to a debtor's or purchaser's claim. On the other hand, at least one Bankruptcy Court has found that a recoupment defense is not extinguished by a "free and clear" sale, and a number of other courts, including this one, have held that a right of recoupment is a defense and

not a claim. Thus, we agree with the Bankruptcy Court in In re Lawrence United Corp. and hold that a right of recoupment is a defense and not an interest and therefore

is not extinguished by a S 363(f) sale.11 The District Court's conclusion to the contrary therefore constitutes legal error.

Although its primary defense to Folger's claims is recoupment, DeMatteis has also asserted a defense of setoff based on amounts owed by Bayley and FAC to DeMatteis as a result of breaches of other contracts for other prison construction projects. DeMatteis has conceded that property that is otherwise subject to a right of setoff under section 553 of the Bankruptcy Code may not be setoff if it has been the subject of a section 363(f) "free and clear" sale. DeMatteis contends, however, that property as to which a setoff has been taken prior to bankruptcy is not property of the estate that would be subject to setoff, but rather, is the property of the party that took the setoff. In support of its argument, DeMatteis cites Pioneer Commercial Funding Corp. v. United Airlines, Inc. , 122 B.R. 871, 877-78 (Bankr. S.D.N.Y. 1991), and 4 Collier on Bankruptcy, P 553.01. Thus, DeMatteis claims that to the extent it took setoffs relating to the prison projects prior to the filing of the bankruptcy petition, that property was not subject to the section 363 sale and, therefore, it is entitled to raise a setoff defense against Folger's claims here.

In response, Folger argues that this case is distinguishable from Pioneer because DeMatteis has not actually taken a setoff against the receivables. Because DeMatteis did not actually take a setoff, but merely asserted a right to setoff, Folger contends the receivables were property of the estate and therefore the right of setoff was extinguished by section 553. Folger further contends that because the "claims" asserted by DeMatteis against Folger arise out of more than one transaction, recoupment is not available here. Finally, Folger claims DeMatteis cannot assert setoff and recoupment defenses in the same action.

_____

11. The Sale Order enjoined creditors from seeking to obtain payment or satisfaction of their claims against the Debtors from the Purchaser or Acquired Assets. Since we have determined that affirmative defenses are not claims under S 363(f), this restriction does not apply to DeMatteis' defenses to Folger's claims.

The District Court noted the exception raised by DeMatteis but found, nonetheless, that it had no

application here since the amounts DeMatteis attempted to setoff before the filing of the bankruptcy petition had not yet been received.12 Folger Adams Security, slip op. at 8. Thus, the District Court concluded the property subject to setoff was still part of the bankruptcy estate. Id. at 9. Consequently, the District Court held that the section 363 sale extinguished DeMatteis's setoff rights. Id.

To decide this question, we turn first to section 553 of the Bankruptcy Code. Section 553(a) provides in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case, . . .

11 U.S.C. S 553(a). The legislative history to section 553 bears out the plain meaning of that provision. The Senate Report explains:

> This section [553] preserves, with some changes, the right of setoff in bankruptcy cases. . . . One exception to this right is the automatic stay, discussed in connection with proposed 11 U.S.C. S 362. Another is the right of the trustee to use property under section 363 that is subject to a right of setoff.

S. Rep. No. 95-989, 95th Cong., 2d Sess., at 91 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5877. Thus, in order to maintain a right of setoff under section 553, the party asserting the right must show:

> 1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

_____

12. The basis for the District Court's conclusion, that the amounts DeMatteis attempted to setoff before the bankruptcyfiling had not yet been received, is unclear. As we note infra, the record here does not provide any evidence of actual setoffs taken or received prior to the filing
of the bankruptcy petition.

18

> 2. The creditor has a claim against the debtor which arose prior to the commencement of the

bankruptcy case.

   3. The debt and the claim are mutual obligations.

Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1035 (5th Cir. 1987) (quoting In re Nickerson & Nickerson, Inc., 62 B.R. 83, 85 (Bankr. D. Neb. 1986)); see also In re Sherry & O'Leary, Inc., 148 B.R. 248, 252-53 (Bankr. W.D. Pa. 1992). Even if the above three requirements are met, the right of setoff will be extinguished if either sections 362 or 363 are invoked.

In this case, the Debtor invoked section 363 to effectuate a "free and clear" sale of the estate property. Consequently, assuming DeMatteis has met the three requirements to maintain a right of setoff, under section 553 its setoff rights are subject to section 363 and therefore are extinguished by the "free and clear sale."

It is possible that an exception to this finding exists where the setoff rights are actually taken prior to the commencement of the bankruptcy proceeding. In Pioneer Commercial Funding Corp., the account debtor of the debtor's accounts receivable filed a motion for relief from stay. 122 B.R. at 876. The account debtor loaned the debtor $3.5 million for which it received a promissory note guaranteeing payment. Id. at 875. Prior to the filing of the bankruptcy petition, the debtor directed the clearing house utilized for collecting and disbursing the accounts receivable, to setoff the account debtor's obligations to debtor by the $3.5 million against the debtor's accounts receivable. Id. Also prior to the bankruptcyfiling, the assignee of the debtor's accounts receivable instituted suit against the account debtor for conversion and tortious interference with a contract, claiming the account debtor knew of the assignee's contract rights with the debtor when it took the setoff. Id. at 876. In the bankruptcy proceeding, the assignee sought damages for any setoffs actually taken by the account debtor prior to the debtor's bankruptcy filing. Id. The district court there held that the automatic stay provisions are not implicated with regard to setoffs already taken by the account debtor for the reason that

19

funds already set off are not estate property under the Bankruptcy Code. Id. at 877.

The record before us does not show if or when DeMatteis actually took a setoff against the construction contracts. Because the motion for summary judgment was filed before any discovery took place, DeMatteis may not have had an opportunity to develop the record to adduce evidence that

it had actually taken a setoff against some of the contracts prior to the bankruptcy filing. On remand, the District Court should allow DeMatteis an opportunity to supplement the record to supply any needed documentation. In our view, DeMatteis must prove that it actually took a setoff, the amounts and against which contracts, before the bankruptcy filing. This does not mean it actually must have received funds, but that its accounts receivable were reduced or offset. To the extent that DeMatteis is able to prove an actual setoff prior to bankruptcy, the property subject to setoff is not deemed part of the bankruptcy estate and therefore was not subject to the section 363 sale. Thus, DeMatteis may assert a defense of setoff but only to the extent it took an actual setoff prior to bankruptcy.

We note that the facts here indicate that DeMatteis is seeking to offset Folger's claims by the costs it incurred due to the Debtors' alleged breach of contract arising out of the same contract, as well as out of other contracts from other construction projects. To the extent the amount being claimed by Folger and the amount of reduction sought by DeMatteis arise from the same contract, DeMatteis' defense will be one of recoupment. However, to the extent the amount being claimed by Folger and the amount of reduction sought by DeMatteis arise from different contracts, DeMatteis' defense will be one of setoff. We express no opinion as to whether DeMatteis has established the requisite elements of either defense, as that determination is best left for the District Court in the first instance. We hold only that DeMatteis is not precluded from asserting these contract defenses against Folger's claims provided, as to the setoff defense, DeMatteis proves it actually took the setoff prior to the bankruptcy.

20

Our holding is further supported by good policy reasons. First of all, if we were to hold that DeMatteis' contract defenses were extinguished by the section 363(f) sale, the value of the Debtors' assets purchased by Folger would be enhanced at DeMatteis' expense. Bankruptcy law generally does not permit a debtor or an estate to assume the benefits of a contract and reject the unfavorable aspects of the same contract. Lee, 739 F.2d at 876. Yet, allowing the Debtors to recharacterize their contract rights as accounts receivable and sell them free and clear of the corresponding obligations yields that very result.13  Second, the equities do not favor Folger and the Debtors here. Folger is not an innocent party. Many of Folger's principals were also principals of the Debtors. Thus, they should have been aware of the dispute regarding the DeMatteis' construction contracts. Indeed, the DeMatteis contracts were removed

from the Designation Notice, presumably because Folger was not willing to have those contracts assumed and assigned to it knowing that DeMatteis contested full payment because of the Debtors' alleged default under those contracts. Thus, Folger should have been aware of DeMatteis' contract defenses when it established the purchase price for the Debtors' assets. Accordingly, we do not see anything inequitable in allowing DeMatteis to raise defenses to Folger's claims of breach of contract.

III.

Even if we were to find that the term "any interest" included affirmative defenses, the notice to DeMatteis was insufficient to give it notice that by failing to object it was

_____

13. DeMatteis makes a persuasive argument that prior to the sale, separate "accounts receivable" and "contracts" did not exist between itself and the Debtors, and that Folger has recharacterized the contracts as "accounts receivable" because the contracts were removed from the Designation Notice. DeMatteis' argument appears to have merit. The only way Folger can prevail here is to recharacterize the contracts as accounts receivable since the Joint Liquidating Plan approved by the Bankruptcy Court specifically preserved DeMatteis' right to raise its defenses (in particular, recoupment and setoff,) to claims against it arising out of the contracts not assumed or assigned to Folger.

21

waiving its affirmative defenses.14 Section 363(b)(1) of the Bankruptcy Code provides that the trustee may use, sell or lease estate property only "after notice and a hearing." 11 U.S.C. S 363(b)(1). The phrase "after notice and a hearing" is defined in section 102 of the Bankruptcy Code as follows:

> (1) "after notice and a hearing", or a similar phrase--
>
> (A) means such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
>
> (B) authorizes an act without an actual hearing if such notice is given properly and if--
>
> (i) such a hearing is not requested timely by a party in interest; or
>
> (2) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

11 U.S.C. S 102(1). The notice requirement and procedure for sales is set forth in Bankruptcy Rules 6004 and 2002. Essentially, Rule 6004 requires that notice of a proposed sale of property shall be given in accordance with Rule 2002(a)(2), (c) and (i).15 Rule 2002(a)(2) directs the clerk to give all parties in interest at least twenty days' notice by mail of a proposed sale of property. According to Rule 2002(c), sufficient notice includes the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections, and, if real estate is being sold, provides a general description of the property. See also, In re Karpe, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988).

_____

14. Although DeMatteis appears to raise an issue of fact with regard to whether it actually received the Notice of Auction sent by Debtors' counsel, we will assume, for sake of argument, that the Notice of Auction was received so that we may proceed to what we perceive as the determinative issue, that is, whether the Notice of Auction was sufficient to inform DeMatteis that its affirmative defenses would be extinguished by the proposed S 363(f) sale if it did notfile an objection by a certain date.

15. Subsection (i) of Rule 2002 is not relevant to this appeal.

In addition to the Bankruptcy Rules, we are guided by due process considerations. Due process requires "notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314–15 (1950) (citations omitted). The Supreme Court further found that the notice which comports with due process must be of such nature as to reasonably convey the required information. Id. at 314.

Informed by these rules and constitutional considerations, we conclude that the Notice of Auction here did not provide DeMatteis with any information to put it on notice that the phrase "any other interests" included contract defenses and, by failing to object, it would waive such defenses. Our conclusion is based upon consideration of the express language of the Notice of Auction as well as the surrounding facts and circumstances. The Notice of Auction expressly provided that the proposed sale of the Debtors' assets would be "free and clear of all liens, mortgages, security interests, encumbrances, liabilities, claims or any other interests, of any nature." We have already found that the phrase "any other interests" does not include defenses. Moreover, nowhere in the Notice of

Auction do the Debtors state that affirmative defenses will be waived, nor are we aware of any court to have ever ruled that affirmative defenses are extinguished in a section 363(f) sale. For these reasons, we find the Notice of Auction reasonably failed to convey the required information, i.e., that the sale included defenses to claims and, therefore, was constitutionally infirm.

Moreover, the two DeMatteis contracts originally listed in the Designation Notice as being assumed and assigned to Folger were subsequently removed from the list, leaving DeMatteis with the impression that none of its contracts were being assumed and assigned in the proposed sale to Folger. Indeed, the express language of the Designation Notice implies that only those non-debtor counter parties whose interests were being assumed and assigned to Folger needed to file an objection and, since none of DeMatteis's contracts were assumed/assigned to Folger, the permanent

23

bar simply does not apply to DeMatteis.16  Thus, DeMatteis reasonably believed that its rights would not be affected by the proposed sale. Under these facts and circumstances, we cannot say that DeMatteis waived its affirmative defenses by failing to object to the proposed sale. Thus, the District Court's conclusion to the contrary constitutes legal error.

Accordingly, we hold that DeMatteis is entitled to raise the defense of recoupment and any other defenses it may have with respect to the disputed Bayley and FAC contracts, in response to the lawsuits brought by Folger. On remand, DeMatteis will have to prove, and the District Court will have to decide, whether DeMatteis is entitled to any of these defenses. It may only assert a right of setoff to the extent it can show it actually took a setoff prior to the bankruptcy filing. Thus, on remand, DeMatteis should be allowed to adduce proof of any setoffs taken prior to the bankruptcy petition.17

IV.

For the reasons set forth above, we will reverse the judgment of the District Court granting summary judgment in favor of Folger and remand to the District Court for further proceedings.

_____

16. The Designation Notice specifically states that unless a non-debtor counter party to an "Assigned Contract" filed a written objection to the assumption/assignment by the deadline, the counter-party shall be forever barred from asserting any default, loss or liability against the assignee of such Assigned Contract (i.e., Folger) based on any event or

circumstance arising prior to the date of the assignment.

17. Because we have found that the bankruptcy sale did not extinguish DeMatteis' affirmative defenses, we need not address DeMatteis' additional argument that the District Court erred in calculating the award of prejudgment interest.

STAPLETON, J., concurring:

I would resolve this appeal by answering a single question: Does S 363(f) of the Bankruptcy Code authorize a sale of a debtor's account receivable free and clear of any defenses arising from the performance or non-performance of the contract giving rise to the account receivable? Such defenses, properly characterized as rights of recoupment, are to be distinguished from rights of set-off, which consist of offsetting claims arising under contracts other than the one giving rise to the account receivable. There is no occasion here to address the issue of whether S 363(f) authorizes a sale of an account receivable free and clear of a right to a set-off.1 DeMatteis concedes that under the Bankruptcy Code the sale extinguished any set-off right that was not exercised more than 90 days before thefiling

_____

1. The effect of a S 363(f) "free and clear" sale on set-off rights is a fundamentally different issue than the effect of such a sale on recoupment rights. The Bankruptcy Code expressly preempts some state laws regarding set-offs. See 11 U.S.C. SS 363(f), 506(a), 553. Moreover, set-offs, which do not relate to the performance of the contract giving rise to the account receivable, do not operate to define the property sold in the same way that a right to recoupment does. See 13 U.S.C. S 547(a)(3); 13 Pa. Cons. Stat. S 9106. Instead, "[s]etoff allows adjustments of mutual debts arising out of separate transactions between the parties." In re Harmon, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) (emphasis added); accord Lee v. Schweiker , 739 F.2d 870, 875 (3d Cir. 1984). This is an important distinction because it follows that a person asserting a set-off, including even a previously exercised set-off, against an account receivable that the Bankruptcy Court purported to sell "free and clear" is not interpreting the Court's order to determine what in fact was sold, but rather is essentially challenging the Bankruptcy Court's authority to approve the sale of property that was not part of the bankrupt's estate. Such an argument may well be barred by S 363(m), which provides that reversal on appeal of an authorization under S 363 does not affect the validity of the sale to a good faith purchaser. See 11 U.S.C. S 363(m); see also In re Sax, 796 F.2d 994, 997-98 (7th Cir. 1986) (holding that failure to obtain the stay required by S 363(m) moots question of whether bankruptcy court lacked authority to sell property that did not belong to the debtor's estate). I do not address this issue, nor the related question of whether despite

S 363(m), sale of an exercised set-off may be challenged on notice grounds, but simply note that set-offs present issues not implicated by rights of recoupment.

of the petition, see 11 U.S.C. S 553(b), and the District Court's decision regarding rights of set-off can be upheld on the ground that DeMatteis has tendered no evidence of such an exercise.2 Nor is there occasion here to address the adequacy of the notice given by the trustee. Concluding, as I do, that S 363(f) does not authorize a sale free and clear of rights of recoupment, the judgment of the District Court must be reversed without regard to the sufficiency of the notice.

Section 363(f) authorizes the trustee, under specific circumstances, to sell property of the estate "free and clear of any interest in such property." 11 U.S.C.S 363(f). Here, the property of the estate that was sold was accounts receivable, and, accordingly, the issue for decision is whether defenses arising out of the performance or non-performance of the contract giving rise to the account receivable are "interest[s] in such property."

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 54 (1979); Integrated Solutions, Inc. v. Service Support

_____

2.   In response to Folger's motion for summary judgment, DeMatteis had the burden of either coming forward with evidence that would support a judgment in its favor, i.e. evidence that its set-offs were exercised more than ninety days prior to the bankruptcy petition, or filing a Rule 56(f) affidavit specifying that discovery was necessary to secure a basis for a defense. See Fed. R. Civ. Proc. 56. DeMatteis did neither. "[U]nder Pennsylvania law, a setoff is accomplished when a creditor gives `sufficient evidence of intent' to make a setoff." IRS v. Norton, 717 F.2d 767, 772 (3d Cir. 1983). While there is evidence that DeMatteis expressed dissatisfaction with Bayley and FAC's performance on each of the various contracts at various times more than ninety days prior to the bankruptcy petition, and, indeed, that it canceled its orders and refused to make further payments, this is evidence only of an intent to exercise its rights of recoupment. There is no evidence that DeMatteis expressed any intention to set-off its rights under one contract against its liabilities
under another. Indeed, the notice that was given to Bayley and FAC that DeMatteis was refusing to make further payments on the contracts at issue here referred only to Bayley and FAC's breach of those contracts; it made no mention of any other contracts.

Specialities, Inc., 124 F.3d 487, 492 (3d Cir. 1997). Under Pennsylvania law, the Uniform Commercial Code (U.C.C.)--Secured Transactions (Chapter 9) governs"any sale of accounts or chattel paper." 13 Pa. Cons. Stat. S 9102(a)(2). "Account" is defined as"any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." 13 Pa. Cons. Stat. S 9106. The Code is consistent with this concept of an account receivable. It defines a "receivable" as a "right to payment, whether or not such right has been earned by performance." 11 U.S.C. S 547(a)(3).

Thus, for present purposes, an account receivable is a right to payment which arises upon the inception of the contract at a point when no performance has been rendered and no payment earned. This understanding of a receivable is inconsistent with the notion that defenses arising from the performance or non-performance of the contract giving rise to it are "interests in" the receivable. A recoupment defense simply does not constitute an interest in the right to payment under the contract. Rather, it serves only to define and limit that right. See 5 Collier on Bankruptcy S 553.10 (explaining that "recoupment applies to define the obligation in question").

Moreover, to construe S 363(f) to authorize a sale of a receivable that would strip defenses based on performance would run counter to the "fundamental principle[of the Code] that the estate succeeds only to the nature and rights of the property interest that the debtor possessed pre-petition," Integrated Solutions, Inc., 124 F.3d at 495, and that the estate should not receive a "windfall merely by reason of the happenstance of bankruptcy." Butner, 440 U.S. at 55. Prior to bankruptcy, Bayley and FAC held rights to payment that may or may not have been earned. If the "free and clear" sale had extinguished defenses arising from the debtor's performance, a fundamental transformation in the nature of the debtor's property would have occurred with a resulting windfall to the estate. While Bayley and FAC on the filing date held only rights to payment subject to the terms of the contracts, the estate would have been able to sell the equivalent of negotiable instruments.

Because I find in S 363(f) and the remainder of the Code no evidence of a congressional intent to authorize such a windfall and because a recoupment defense is in no sense

an interest in the right to payment, I too would reverse the judgment of the District Court and remand for further proceedings.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit