**In re TRANS WORLD AIRLINES, INC., et al., Debtors.**

**MBNA America Bank, N.A., Plaintiff,**

**v.**

**Trans World Airlines, Inc., TWA Airlines, L.L.C. and American Airlines, Inc., Defendants.**

**Bankruptcy No. 01–56 (PJW).**

**Adversary No. 01–7802(MFW).**

United States Bankruptcy Court, D. Delaware.

April 2, 2002.

Laura Davis Jones, Bruce M. Grohsgal, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE, James H.M. Sprayragen, Thomas E. Dutton, Laurie M. Thornton, Kirkland & Ellis, Chicago, IL, for debtors and debtors-in-possession Trans World Airlines, Inc.

John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, DE, David E. Rice, Venable, Baetjer and Howard, LLP, Baltimore, MD, for MBNA America Bank, N.A.

Joanne Pileggi Pinckney, Bouchard, Margules & Friedlander, Wilmington, DE, Alan B. Miller, Richard A. Rothman, Robert S. Berezin, Weil Gotshal & Manges, LLP, New York City, for American Airlines, Inc. and TWA Airlines, LLC.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are the Motions of the Defendants to Dismiss the Complaint filed by MBNA America, N.A. ("MBNA") and the Motion of MBNA for Partial Summary

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

Judgment. For the reasons stated below, we grant, in part, both the Motions to Dismiss and the Motion for Partial Summary Judgment.

## I. *BACKGROUND*

On January 10, 2001, Trans World Airlines, Inc. ("the Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code. On that same day, the Debtor filed a Motion for approval of an Asset Purchase Agreement ("the APA") for the sale of substantially all the assets of the Debtor to American Airlines, Inc. ("American"). By Order dated February 9, 2001, the Court approved procedures by which others could bid for the Debtor's assets ("the Bid Procedures Order"). The sale to American was ultimately approved by the Court by Order dated March 12, 2001 ("the Sale Order").

Prior to the bankruptcy case being filed, on September 30, 1999, the Debtor had entered into an agreement with MBNA ("the Affinity Agreement") which tied a credit card program of MBNA's with the Debtor's frequent fliers program ("the Aviators Program"). Pursuant to that agreement, MBNA issued credit cards with the Debtor's logo, which when used by the customer earned frequent flier miles on the Debtor's airline. The Affinity Agreement provided for MBNA to be the exclusive credit card issuer with such a program.

On February 23, 2001 (subsequent to the bankruptcy, but before the sale to American was approved), MBNA filed a Motion to compel the Debtor to assume or reject the Affinity Agreement. Since the sale to American did not contemplate an assumption and assignment of the MBNA agreement, the Debtor filed a Motion to reject the MBNA agreement on March 16, 2001 (after the sale to American had been consummated). On April 9, 2001, an Order was entered authorizing the Debtor to reject the Affinity Agreement but only after the Debtor gave seven days' written notice to MBNA. MBNA filed a motion for reconsideration of that Order, objecting to the delay in rejection. MBNA also filed a motion for relief from the automatic stay to permit it to terminate the Affinity Agreement. Those motions were ultimately settled by the entry of a Consent Order on August 29, 2001, allowing MBNA to terminate the Affinity Agreement, which MBNA did as of September 24, 2001.

As part of the APA, American purchased the accounts receivable of the Debtor, including sums due to the Debtor from MBNA under the Affinity Agreement. When MBNA failed to pay the receivable due by it, American sued it in Texas state court.[2] MBNA raised as defenses in that suit its entitlement to setoff and recoup damages caused by the Debtor's breaches of the Affinity Agreement. American asserted that its purchase of the accounts receivable were free and clear of all claims and interests and that, consequently, any rights which MBNA may have are merely claims against the Debtor.

MBNA filed proofs of claim in the Debtor's bankruptcy case, asserting both prepetition and post-petition, administrative claims against the Debtor. MBNA also filed a complaint in this Court against both the Debtor and American[3] seeking a declaration that the account receivable due from it was not purchased by American free and clear of the defenses of setoff and recoupment or, alternatively, if the sale

---

**2.** That suit has subsequently been removed to the District Court for the District of Delaware.

**3.** MBNA has also named as a defendant TWA Airlines, L.L.C., the vehicle by which American purchased the Debtor's assets. Both defendants are collectively referred to herein as American.

was free of such defenses, that its claim attached to the proceeds of the sale; asserting breach of contract claims; asserting both secured and administrative claims for such breaches and seeking the establishment of reserves for those claims; and asserting tortious interference and civil conspiracy to interfere with its contract with the Debtor.

American and the Debtor filed Motions to dismiss the complaint for failure to state claims on which relief can be granted. MBNA filed a Motion for partial summary judgment on the issue of whether the sale of the account receivable was free and clear of the defenses of setoff and recoupment. The parties have fully briefed the issues and oral argument was heard on March 19, 2002.

## II. *JURISDICTION*

This Court has jurisdiction over this Motion, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), (K) and (O).

## III. *DISCUSSION*

### A. *Motion for Partial Summary Judgment*

■ To grant a motion for summary judgment, the court must determine if the moving party has established that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must assume that undisputed facts set forth in the record are true. *In re Trans World Airlines, Inc.*, 180 B.R. 386, 387 (Bankr.D.Del. 1994); *Tanzer v. International Gen. Ind., Inc.*, 402 A.2d 382, 386 (Del.Ch.1979).

In this case MBNA has filed a Motion for Partial Summary Judgment seeking a ruling that the Sale Order did not sell the account receivable due by it to American

free and clear of its defenses of setoff or recoupment. The parties agree that these are legal issues and that there are no material issues of fact in dispute relevant to those issues.

### 1. *Was the Sale Free and Clear of Setoff Rights?*

MBNA asserts that its claims are valid setoff claims which were not eliminated by the sale to American free and clear of claims or interests. The Defendants assert that the Third Circuit has held that setoff rights are eliminated by a sale order under section 363. *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252 (3d Cir.2000).

The facts of *Folger Adam* are remarkably similar to this case: the debtor sold its assets free and clear to a buyer, which purchased the account receivable due from DeMatteis but did not assume the contract. In *Folger Adam,* the Court relied on the language of section 553 of the Bankruptcy Code which provides that setoff rights are preserved in bankruptcy, "except as otherwise provided in ... section 363." 11 U.S.C. § 553. Thus, the Court concluded that an order under section 363 which sells property free and clear of liens and other interests does sell that property free of setoff rights. 209 F.3d at 262–63. However, the Court did note one possible exception to this result: where the setoff rights were actually exercised prior to the bankruptcy case being filed. In the latter case, the Third Circuit in *Folger Adam* concluded that "[t]o the extent that DeMatteis is able to prove an actual setoff prior to bankruptcy, the property subject to setoff is not deemed part of the bankruptcy estate and therefore was not subject to the section 363 sale." *Id.* at 263, *citing In re Pioneer Commercial Funding Corp. v. United Airlines, Inc.,* 122 B.R. 871, 877–78 (S.D.N.Y.1991).

■ In this case, MBNA does not assert that it effected any setoff pre-peti-

tion, but rather asserts that, post-petition, it effected an administrative freeze on the sums otherwise due by it to the Debtor/American and promptly filed a motion for relief from the stay. Therefore, it argues that it is entitled to conclude the setoff under the ruling in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (placing an administrative freeze on a debtor's bank account was not a setoff in violation of the automatic stay, since the bank promptly filed a motion for relief from the stay to allow it to effect the setoff).

We conclude, however, that *Strumpf* is not applicable to any claim MBNA may have against American. *Strumpf* dealt with the limitation on setoff rights imposed by section 362, while we deal with the limitation on setoff rights imposed by section 363. While both limitations are preserved in section 553, their nature is essentially different. Section 362 does not eliminate setoff rights, it merely imposes a stay on enforcing them.

Section 363, on the other hand, does eliminate setoff rights vis-á-vis the buyer by permitting a sale free of such interests. The only exception to this result is if the setoff has been exercised before the bankruptcy case is filed (as the Third Circuit held in *Folger Adam*). In this case, MBNA does not allege in its complaint that it exercised its setoff rights before the bankruptcy case was filed by the Debtor. Thus, the Sale Order transferred the account receivable to American free and clear of any setoff rights which MBNA may have. Therefore, we must deny MBNA's Motion for Partial Summary Judgment against American on this issue.

■ The Debtor asserts that it is also entitled to denial of MBNA's Motion for Partial Summary Judgment on this issue,

because the Court in *Folger Adam* held that a section 363 sale extinguishes setoff rights. However, the Court in *Folger Adam* was dealing only with a claim against the purchaser of the accounts receivable, not with the validity of a claim against the debtor and the proceeds of the sale. Thus, its ruling does not require that we deny MBNA's motion for summary judgment vis-á-vis the Debtor on this point.

Furthermore, the Sale Order itself conclusively establishes MBNA's right to pursue any setoff claim it may have against the Debtor. That Order, rather than extinguishing setoff rights, expressly provided that "Any and all alleged Liens and claims on such Transferred Assets ... shall be transferred, affixed, and attached to the proceeds of such sale, with the same validity, priority, force and effect as such Liens had upon the Transferred Assets immediately prior to the Closing." (Sale Order at ¶ 4.) Thus, to the extent MBNA had any setoff right against the account receivable sold, it has been preserved as a claim against the Debtor and the proceeds of the sale. MBNA's Motion for Partial Summary Judgment against the Debtor declaring that the Sale Order did not extinguish any setoff rights it may have against the Debtor, but instead attached to the proceeds of the sale, must be granted.

### 2. Was the Sale Free and Clear of Recoupment Rights?

■ To determine whether the sale of the MBNA account receivable from the Debtor to American was free and clear of MBNA's asserted right of recoupment, we again look to the Third Circuit's decision in *Folger Adam.* Both sides rely on that decision but assert that it supports opposite conclusions.

In *Folger Adam,* the Third Circuit, relying on earlier case law,[4] concluded that "a

4. *See, e.g., Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984); *In re Lawrence United Corp.,*

right of recoupment is a defense and not an interest and therefore is not extinguished by a § 363(f) sale." 209 F.3d at 261. Consequently, we conclude that MBNA is entitled to summary judgment on its request for a declaratory judgment that the Sale Order did not authorize the sale of the account receivable to American free and clear of any defense of recoupment that MBNA may have.

For the reasons stated above on the issue of setoff, we also conclude that MBNA is entitled to summary judgment against the Debtor on the issue of whether any right of recoupment it may have against the Debtor was not extinguished by the Sale Order but survives as a claim against the proceeds to the same validity, priority and extent that it existed before the sale of the assets.

### B. *Motion to Dismiss for Failure to State a Claim*

■ Where a party has filed a motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the plaintiff. *See, e.g., Weston v. Commonwealth of Pennsylvania,* 251 F.3d 420, 425 (3d Cir. 2001); *Semerenko v. Cendant Corp.,* 223 F.3d 165, 180 (3d Cir.2000). Therefore, we are required to determine whether MBNA can prove any set of facts consistent with its allegations that would entitle it to the relief sought. *See, e.g., Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

The Defendants argue that several of the claims asserted by MBNA must be dismissed as they fail to state a claim upon which relief can be granted. Further, the Debtor asserts that, to the extent MBNA may have any claims against it, those claims are not administrative claims but are merely pre-petition, general unsecured claims. We must accept the allegations in the complaint as true and determine whether any relief can be granted on those facts as pled.

#### 1. *Setoff Rights*

■ Because we have concluded, as a legal matter, that the Sale Order transferred the account receivable due from MBNA to American free of any setoff rights which MBNA may have, MBNA cannot state a claim against American on this point. Therefore, American's Motion to Dismiss this count must be granted.

However, for the reasons stated above, we cannot dismiss this count against the Debtor on the basis of the *Folger Adam* ruling. However, the Debtor raises additional arguments for dismissal of this count as to it. Specifically, the Debtor asserts that MBNA may not assert any claim for setoff because its claim for setoff involves post-petition claims, while section 553 preserves setoff only to the extent that it allows setoff of pre-petition claims against pre-petition claims. *See, e.g., In re Anes,* 195 F.3d 177, 182 (3d Cir.1999).

However, the *Anes* Court was merely reciting the language of section 553 which states that "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a). That section (and the Court in *Anes*) are silent, however, as to whether a creditor may offset a post-petition claim owing to the debtor against a post-petition debt which the debtor owes

221 B.R. 661, 669 (Bankr.N.D.N.Y.1998); *In re Bram,* 179 B.R. 824, 827 (Bankr.E.D.Tex. 1995); *In re Izaguirre,* 166 B.R. 484, 493 (Bankr.N.D.Ga.1994).

to it. Other courts have held that neither section 553 nor any other provision of the Code eliminates the right to setoff mutual post-petition claims. *See, e.g., In re Seal,* 192 B.R. 442, 457 (Bankr.W.D.Mich.1996). Consequently, we conclude that MBNA may be able to prove it has a right of setoff as to the Debtor.

### 2. Recoupment Rights

Even if MBNA has a valid legal right to assert recoupment notwithstanding the Sale Order, the Defendants assert that the Complaint on this point must be dismissed because MBNA's claims do not arise out of the same transaction as the account receivable and, therefore, it has no right of recoupment. They cite, as support for their motion to dismiss the complaint, the Third Circuit decision in *In re University Medical Center,* 973 F.2d 1065 (3d Cir. 1992).

In *University Medical Center,* the Third Circuit explained that the doctrine of recoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Id.* at 1079. Because it arises from the same transaction, recoupment is viewed as a defense rather than as a claim against the debtor and is, therefore, not subject to the limitations that a claim may have under the Bankruptcy Code (such as the automatic stay and the requirements of mutuality applicable to setoff rights). *Id.* at 1080.

The Defendants assert that the claims of MBNA, if any, are in the nature of setoff rather than recoupment rights. MBNA disagrees asserting that its claims arise from the same transaction as the account receivable, namely the parties' respective rights under the Affinity Agreement.

The Defendants assert, however, that simply because two claims arise under the same contract does not make them subject to a recoupment defense. They note that

the claims in *University Medical Center* arose under the same contract, a medical provider agreement, but that the Third Circuit nonetheless concluded that recoupment did not apply. *Id.* at 1081. However, the Third Circuit decision was based on an examination of the parties' entire relationship after which it concluded that, while there was one provider agreement that lasted indefinitely unless terminated by one of the parties, the transactions between the parties were divided into annual periods. The Court found that "[t]he Medicare account reconciliation process supports this conclusion. The relevant regulations state that each provider cost-year is subject to a distinct annual audit, which follows the submission of a separate cost report for each fiscal year.... These regulations indicate that reimbursement payments made for any one year arise from transactions wholly distinct from reimbursement payments made for subsequent years." *Id.* at 1080. Thus, the Third Circuit concluded that claims for overpayments arising under the 1985 cost year could not be recouped from payments due to the debtor for services rendered in the 1988 cost year because they were not part of a single integrated transaction. *Id.*

The holding of the Third Circuit in *University Medical Center* is distinguishable from the facts of this case, however. Here there is no evidence that the parties treated each year as a separate transaction, nor is there even an extended period of time between the account receivable and the recoupment claims. Both claims arise from services provided (and alleged breaches of obligations) under the same agreement during a relatively short period of time.

The Defendants assert, however, that the account receivable and the claim of MBNA do not arise out of a single integrated transaction because the account re-

ceivable is founded on royalties due for the use of the credit cards by consumers which bear the TWA logo. In contrast, the Defendants assert, the claims of MBNA are based on alleged breaches of the indemnification and exclusivity provisions of the Affinity Agreement, which do not relate at all to the transactions with customers.

We disagree. Both claims arise under the Affinity Agreement, which is a single integrated transaction between the Debtor and MBNA. Although the calculation of the royalties depends on the actual purchases made by the customers, the royalties are due not for what the customers purchased but for the use of the TWA trademarks, which is authorized under the Affinity Agreement.

MBNA's claims include a claim that the Debtor breached the confidentiality and exclusivity provisions of the Affinity Agreement by giving information about MBNA's customers to American and allowing American to solicit them for its own affinity credit card. Since MBNA's agreement to pay royalties to the Debtor was premised on MBNA being the exclusive credit card company to use the TWA logo and to have such an affinity agreement with the Debtor, we conclude that the claims of MBNA (for breach of the Affinity Agreement) arise from the very same transaction on which the account receivable is premised.

For recoupment to apply, "[b]oth debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *University Medical Center,* 973 F.2d at 1080–81.

In this case, we find that it would be inequitable for the Debtor/American to enjoy the benefits of the Affinity Agreement (the royalty payments) without meeting its obligations (the exclusivity and confidentiality provisions). Therefore, we conclude

that MBNA has stated a claim against both American and the Debtor for recoupment and the Defendants' Motion to Dismiss will be denied.

### 3. Breach of Indemnity Provisions

In its complaint, MBNA also asserts that it is entitled to an administrative claim against the Debtor for indemnity under the provisions of the Affinity Agreement for all expenses incurred by it in defending against the action brought by American and in pursuing its claim against the Debtor for breach of the Affinity Agreement. It cites paragraph 6b of the Affinity Agreement which provides that "TWA shall be liable to and shall indemnify and hold MBNA ... harmless from and against any Losses, arising from: (i) material breach of this Agreement by TWA ... (iv) any claim or suit against MBNA ... relating to the Miles Program or the TWA Aviators Program...." MBNA asserts that since the suit by American against it occurred post-petition, its claim for indemnity arose post-petition and is entitled to administrative claim status.

The Debtor asserts that MBNA's claim for indemnity is not entitled to administrative status for several reasons. Primarily, it asserts that contractual indemnity claims based on pre-petition contracts are pre-petition claims.

We conclude that this argument is dispositive. It is well-established law in this Circuit that an indemnity claim based on a pre-petition contract is a pre-petition, not an administrative, claim. *See, e.g., Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.),* 744 F.2d 332, 336–37 (3d Cir.1984); *In re Pinnacle Brands, Inc.,* 259 B.R. 46, 50 (Bankr. D.Del.2001).

Therefore, we conclude that, to the extent MBNA seeks administrative status for its indemnity claim and the establish-

ment of a reserve under the Debtor's proposed plan of reorganization for that claim, it has failed to state a claim on which relief can be granted and it must be dismissed.

#### 4. *Breach of Confidentiality and Exclusivity Provisions*

 MBNA asserts that the Debtor breached the confidentiality and exclusivity provisions of the Affinity Agreement by using (or permitting American to use) the TWA trademarks, logos, and mailing lists to solicit Aviator Program members for an American affinity program. MBNA further asserts that, by participating in this course of conduct, American tortiously interfered with MBNA's contract with the Debtor.

The Debtor asserts that no claim can be asserted by MBNA against it because all its actions were taken pursuant to orders entered by this Court. For example, the Debtor asserts that its actions in operating the Aviator Program were taken pursuant to an Order of this Court allowing it to continue that program. Similarly, the Debtor asserts that MBNA cannot assert that the Debtor breached the confidentiality provisions of the Affinity Agreement by giving confidential information to American, because it was permitted to do so in accordance with the Bid Procedures Order and ultimately by the Sale Order.

However, the Orders entered by this Court do not insulate the Debtor from *any* liability for its actions. For example, nothing in the Order allowing the Debtor to continue to operate the Aviator Program granted the Debtor leave to violate any otherwise enforceable legal or contractual obligations the Debtor had in doing so. Specifically, it did not give the Debtor leave to breach any confidentiality or other obligations it might have had to MBNA. A debtor which continues to operate post-petition is obligated to do so in accordance with its other legal obligations. To fail to do so may subject the debtor to suit. 28

U.S.C. § 959. *See also In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir.1984)("Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state laws"); *In re Kaiser Steel Corp.*, 87 B.R. 662, 665 (Bankr.D.Colo.1988)(" § 959(b) mandates compliance with applicable state law during the post-petition period by a debtor-in-possession which continues to operate a debtor's business"). Thus, dismissal of the suit is not mandated simply because the Debtor continued to operate its Aviator Program pursuant to an Order of this Court.

Similarly, neither the Bid Procedures Order nor the Sale Order itself insulates the Debtor from suit for breach of the confidentiality provisions of the Affinity Agreement. The Debtor is correct that in the conduct of a sale under the Bankruptcy Code, the Debtor must permit due diligence by prospective buyers (and by doing so reveal confidential information relating to contracts which the buyers may wish to have assumed and assigned to them). However, this is generally done under confidentiality arrangements which bar the prospective buyers from using that information if they are not the winning bidder or do not elect to assume the contract in question. Thus, the allegations of MBNA, that the Debtor gave American confidential information relating to the Affinity Agreement which American used even though American did not elect to assume the MBNA contract, may support a claim against American and/or the Debtor. Further, MBNA asserts that the Debtor breached the Affinity Agreement before the bankruptcy case was filed, because American had completed its due diligence

before that date as evidenced by the fact that on the same day that the Debtor filed its bankruptcy petition, it filed its motion for approval of the sale to American. If this is the case, the Debtor cannot use the Bid Procedures Order or Sale Order to justify any pre-petition breach of the Affinity Agreement.

Thus, we conclude that MBNA has stated a claim on which relief may be granted for breach of the confidentiality and exclusivity provisions of the Affinity Agreement against the Debtor and tortious interference with contract against American. The Motions to dismiss those claims must be denied.

### 5. *Breach of Contract by Sale of Assets*

 MBNA also asserts that the Debtor breached the Affinity Agreement when it sold all its assets to American. (Complaint at ¶ 40a.) It asserts that under the Affinity Agreement, the Debtor was required to maintain ownership of the logos and trademarks during the term of that Agreement. Alternatively, it asserts the Debtor was required to assume that American complied with the Affinity Agreement.

The Debtor asserts that, to the extent its actions were a breach of the Affinity Agreement, the agreement conflicts with the Bankruptcy Code which allows the Debtor to sell its assets free and clear of interests and claims and to decide whether to assume or reject executory contracts. American similarly asserts that the allegations that it tortiously interfered with the Affinity Agreement by inducing the Debtor to exercise its rights under sections 363 and 365 of the Bankruptcy Code must fail.

We agree. Courts have held that pre-petition agreements purporting to interfere with a debtor's rights under the Bankruptcy Code are not enforceable. *See, e.g., In re Trans World Airlines, Inc.,* 261 B.R. 103, 113–14 (Bankr.D.Del.2001) (contractual provision which purports to waive debtor's right to reject contract under Bankruptcy Code violates public policy and is not enforceable).

Consequently, to the extent that MBNA asserts that the provisions of the Affinity Agreement prohibited the Debtor from selling its logos (to American or anyone else) or required the Debtor to assume and assign the Affinity Agreement as part of a sale, in derogation of the Debtor's rights under section 363 and 365, its claim must be dismissed.

### 6. *Claim for Administrative Reserve*

 Even if MBNA does have valid claims for breach of contract against it, however, the Debtor asserts that MBNA's claims are not entitled to administrative status. Therefore, the Debtor asserts that MBNA's claim for the establishment of a reserve under the Debtor's proposed plan of reorganization for its administrative claims must be denied. The Debtor notes that, even if the Affinity Agreement was not rejected, it clearly was not assumed. *See, e.g., University Medical Center,* 973 F.2d at 1077–79 (contract cannot be assumed by debtor without court order approving assumption). Thus, the Debtor asserts that the claim of MBNA is merely for breach of a pre-petition contract.

The Debtor asserts that even post-petition breaches of a pre-petition contract are treated merely as pre-petition claims, not administrative claims, in the absence of assumption of that contract. *See, e.g., In re Remington Rand Corp., Inc.,* 836 F.2d 825, 830 (3d Cir.1988); *In re Airlift International,* 761 F.2d 1503, 1509 (11th Cir.1985). This is so because a claim for breach of contract exists once a contract is executed, although it may be inchoate or contingent. *Remington Rand Corp.,* 836 F.2d at 830; *In re Continental Airlines, Inc.,* 146 B.R. 520 (Bankr.D.Del.1992). "Once the contingency occurs, even if it occurs post-petition, 'the contingent claim simply becomes

a liquidated one; it, however, is not thereby elevated to the status of a post-petition claim'." *In re Chateaugay Corp.*, 102 B.R. 335, 352 (Bankr.S.D.N.Y.1989).

Further, the Debtor asserts that simply because a claim arises post-petition does not give it administrative status. Rather, to be accorded administrative status a claimant must establish that the claim arises from a post-petition contract or transaction with the debtor and that it actually benefitted the estate. *See, e.g., Pinnacle Brands*, 259 B.R. at 51 and cases cited therein. The Debtor asserts that MBNA has failed to establish either.

MBNA asserts, however, that the breaches of contract by the Debtor did involve post-petition conduct (or transactions) by the Debtor that did result in a benefit to the estate. It notes that the Debtor intentionally continued to operate its Aviator Program post-petition and post-sale in order to permit American to migrate those members to its own affinity program. MBNA asserts that this benefitted the estate directly be reducing or eliminating any claims which the members might have against the Debtor for breach of the member agreements caused by a precipitous termination of the program.[5]

The Debtor responds that the benefit conferred on the estate was derived, not from any services or benefit conferred by MBNA or the Affinity Agreement, but instead by the Aviator Program which is a separate contractual relationship between the Debtor and its members. In order for MBNA's claims to rise to administrative status, the Debtor argues, MBNA must have been the one to confer a benefit on the estate. Further, the Debtor notes that MBNA could have requested termination of the Affinity Agreement earlier, but chose not to because MBNA itself benefitted by the continued use of its credit card by Aviator Program members.

We agree with the Debtor. There was no post-petition transaction or relationship between the Debtor and MBNA which would elevate MBNA's claims from mere breaches of a pre-petition contract to breaches of a post-petition contract entitled to administrative status. MBNA conveyed no benefit on the Debtor or its estate by continuing to use the Debtor's trademark and logos under the Affinity Agreement, it benefitted itself. Further, the Debtor clearly stated that it would not be assuming or assigning the Affinity Agreement, by not including it in the sale to American and by filing a motion to reject it. While MBNA complains that the rejection was not effective immediately, MBNA was free to ask the Court to expedite the rejection. 11 U.S.C. § 365(d)(2).[6] Its failure to do so does not mean that the contract was assumed or that any breach of the contract by the Debtor is an administrative claim.

## IV. CONCLUSION

For the foregoing reasons, MBNA's Motion for Partial Summary Judgment will be granted in part and a declaratory judgment issued declaring that the Sale Order

5. MBNA points to pleadings filed by the Debtor in connection with its motion to permit it to continue to operate the Aviator Program as an admission by the Debtor of the benefit derived from the estate by doing so.

6. Its failure to pursue this course may have been a recognition of the effect of a rejection of the Affinity Agreement on its rights. Under section 365(n), the rejection of a contract under which the debtor is the licensor of intellectual property gives the licensee two options: to treat the contract as terminated or to retain its rights to use the intellectual property (including exclusivity rights). In the event the licensee chooses the latter, however, the licensee is obligated to pay all royalty payments, without any right of setoff or any right to assert an administrative claim under section 503(b). 11 U.S.C. § 365(n).

did not eliminate MBNA's defense of recoupment against American, although it did eliminate any right of setoff against American. Further, the Motion will be granted vis-á-vis the Debtor since the Sale Order did preserve any rights of recoupment or setoff which MBNA may have against the Debtor as a claim against the proceeds of the sale.

Further, the Motions to Dismiss filed by the Defendants will be denied except with respect to MBNA's claim for breach of the Affinity Agreement by the Debtor's sale to American and its assertion of administrative status and request for the establishment of a reserve for its claims under the Debtor's plan of reorganization.