**In re ANECO ELECTRICAL CONSTRUCTION, INC.,
Debtor.**

**No. 8:04–bk–24883–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 20, 2006.

Amy Denton Harris, Scott A. Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, Stuart Jay Levine, Walters Levine Klingensmith & Thomison, Sarasota, FL, for Debtor.

**ORDER ON (1) M.C. DEAN, INC.'S MOTION FOR REDUCTION OF THE PURCHASE PRICE AND REFUND FROM DEBTOR, OR ALTERNATIVELY, RECONSIDERATION AND CLARIFICATION OF JULY 6, 2005 ORDER, AND (2) SKANSKA USA BUILDING INC.'S CROSS–MOTION FOR FURTHER DETERMINATION OF SETOFF AND RELATED RIGHTS**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Motion for Reduction of the Purchase Price and Refund from Debtor, or Alternatively, Reconsideration and Clarification of July 6, 2005 Order filed by M.C. Dean, Inc. (Dean), and (2) the Cross–Motion for Further Determination of Setoff and Related Rights filed by Skanska USA Building, Inc. (Skanksa).

Prior to the filing of the bankruptcy petition, Skanska and Aneco Electrical Construction, Inc. (the Debtor) entered into a Subcontract Agreement pursuant to which the Debtor, as subcontractor, agreed to provide electrical installation services and materials on a construction project undertaken by Skanska at Tampa International Airport. During the course of the Debtor's chapter 11 case, the Subcontract Agreement was assigned to Dean.

The dispute presented in the Motion and Cross–Motion relates to the approximate sum of $169,235.00 that represents the work completed by the Debtor on the Tampa Airport project.

### Background

The Debtor is an electrical contracting company.

Skanska is a construction services company with offices located throughout the United States.

On April 24, 2004, Skanska, as the Contractor, and the Debtor, as a Subcontractor, entered into a Subcontract Agreement for a project at the Tampa International Airport (the Airport Subcontract). The total amount of the Airport Subcontract was $510,738.00.

On December 30, 2004, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

As of the petition date, the Debtor had completed most of its work under the Airport Subcontract and was not in default.

On February 28, 2005, the Debtor filed an Ex Parte Motion for Approval of Procedures Related to (A) Its Sale of Certain Assets of the Tampa Operations Pursuant to 11 U.S.C. § 363 Free and Clear of All Liens, Claims and Encumbrances and (B) Its Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto (the Procedures Motion). (Doc. 239).

In the Procedures Motion, the Debtor requested the entry of an order approving certain procedures related to the proposed sale of assets to M.C. Dean, Inc.

On March 3, 2005, the Debtor filed a Motion for Order Authorizing (A) the Sale of Certain Assets of the Tampa and Clearwater Operations Pursuant to 11 U.S.C. § 363 Free and Clear of All Liens, Claims and Encumbrances and (B) Its Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases Re-

lated Thereto (the Sale Motion). (Doc. 263).

In the Sale Motion, the Debtor requested the entry of an order authorizing the sale of assets and the assignment of executory contracts to Dean.

On March 9, 2005, the Court entered an Order granting the Procedures Motion. (Doc. 278).

On March 22, 2005, the Court entered an Order granting the Sale Motion (the Sale Order). In the Sale Order, the Court "authorized and approved in all respects, pursuant to §§ 105(a), 363(b), 365(b) and (f) of the Bankruptcy Code" the sale of certain assets to Dean. (Doc. 364, Sale Order, p. 6). The Sale Order also provided:

K. The Purchased Assets are being sold without collusion and in good faith. The Buyer is a buyer in good faith for the Purchased Assets and, as such, is entitled to the protections afforded thereby by § 363(m) of the Bankruptcy Code. Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the Agreement and the transactions contemplated thereby to be avoided under § 363(n) of the Bankruptcy Code.

. . .

16. Pursuant to §§ 105(a) and 363(b)(1) of the Bankruptcy Code, upon the closing under the transaction contemplated by the Agreement, the Assets shall be transferred to Buyer free and clear of all debts arising in any way in connection with any acts of the Debtor, claims (as defined in § 101(5) of the Bankruptcy Code), demands, guaranties, options, rights, contractual commitments, restrictions, interests, any purported rights of set-off arising out of the rejection of any construction contract which is not an Assumed Contract and

matters of any kind and nature arising prior to the Closing Date or relating to acts occurring prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise, except as provided in this Order. Except as expressly provided for in the Agreement or this Order, the Successful Bidder shall not be liable in any way (as successor entity or otherwise) for any claims that any of the claimants or any third party may have against the Debtor and the Purchased Assets (collectively, the "Claims").

(Doc. 364, Sale Order, pp. 5, 10–11).

The sale authorized by the Sale Order closed on March 21, 2005, and Dean purchased the assets described in the Sale Order for the sum of $375,000.00.

The Airport Subcontract, described in the sale documents as "Job # 20–676, TIA C–Integration," was sold and assigned to Dean pursuant to the Sale Order.

On March 25, 2005, Skanska filed a Motion for Reconsideration of the Sale Order. (Doc. 373). Generally, Skanska contended that it had incurred a loss of approximately $2,000,000.00 because of the Debtor's breach of a separate subcontract for electrical work on a hospital located in Homestead, Florida. According to Skanska, it is entitled to set off the $2,000,000.00 loss that it incurred on the Homestead project against any amounts owed to the Debtor on the Airport Subcontract.

In the Motion for Reconsideration, therefore, Skanska asserted that the Sale Order improperly terminated its setoff rights with respect to the Airport Subcontract for two primary reasons. First, Skanska asserted that it was not effectively notified that the Airport Subcontract was subject to the sale to Dean. Second, Skanska asserted that the "free and clear" language contained in the Sale Order was

broader than the authorization requested in the Sale Motion.

On July 6, 2005, the Court entered an Order granting Skanska's Motion for Reconsideration. (Doc. 602). In the Order, the Court amended the Sale Order "for the limited purpose of allowing Skanska USA Building Inc. to assert its setoff rights related to the Airport Subcontract, without prejudice to all claims and defenses that any other party may have with respect to the right asserted by Skanska."

> Under these circumstances, the Court finds that the Sale Order should be amended to permit Skanska to assert its right to set off the loss that it incurred on the Homestead project against any amounts owed by it under the Airport Subcontract. Although Skanska is permitted to assert such a setoff right, however, this Order does not constitute a determination regarding the merits or validity of the asserted right of setoff, and the Order is without prejudice to the claims and defenses of any other party with respect to Skanska's assertion of the right.

(Doc. 602, p. 13).

On July 14, 2005, Dean filed the Motion for Reduction of the Purchase Price and Refund from Debtor, or Alternatively, Reconsideration and Clarification of July 6, 2005 Order that is currently at issue. (Doc. 622).

In the Motion, Dean contends that the Order on Skanska's Motion for Reconsideration is "vague as to which entity Skanska has a right to assert the setoff, M.C. Dean or the Debtor." (Doc. 622, pp. 5–6).

Specifically, Dean contends that it would be entitled to reimbursement from the Debtor if Skanska were allowed to setoff amounts owed to Dean for the Airport Subcontract, against amounts that Skanska claims from the Debtor on the Homestead project. Alternatively, Dean requests that the Court amend the July 6 Order "to make it clear that this Court intended to allow Skanska to assert a setoff with respect to the *proceeds* of the sale that are now part of the Debtor's estate." (Doc. 622, p. 6)(Emphasis in original).

In response, Skanska requests in its Cross–Motion for Further Determination of Setoff that the Court enter an Order "determining that Skanska has a valid setoff against any and all affirmative claims of the Debtor and Dean on the TIA subcontract and any other subcontract under which the Debtor claims monies due from Skanska." (Doc. 657, p. 7).

### Discussion

The issue is whether Skanska may assert its right of setoff following the sale of the Airport Subcontract to Dean free and clear of liens and, if so, whether the right may be asserted against Dean (as the purchaser), or against the Debtor, or against both Dean and the Debtor.

### I. Dean purchased the Airport Subcontract free and clear of Skanska's setoff claim.

██ First, the Court finds that the sale and assignment of the Airport Subcontract to Dean free and clear of all claims arising from the Debtor's pre-sale conduct effectively terminated Skanska's right of setoff *as against Dean.* Consequently, Skanska may not withhold the amounts due to Dean for work completed on the Airport Subcontract based on Skanska's separate claims against the Debtor arising from the Homestead project.

The Airport Subcontract was sold to Dean pursuant to § 363(f) of the Bankruptcy Code. Section 363(f) provides:

> **11 USC § 363. Use, sale, or lease of property**

. . .

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "By affording clear title to purchasers from the estate, sales under § 363(f) make the estate's assets more attractive in the market. This, in turn, can 'maximize the value of the asset[s], and thus enhance the payout made to creditors' on a full administration of the estate." *In re Eveleth Mines, LLC,* 312 B.R. 634, 649–50 (Bankr.D.Minn.2004).

■ "The well established rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property and that any claims against the property attach to the proceeds." *In re Lady H Coal Company, Inc.,* 199 B.R. 595, 605 (S.D.W.Va.1996). Consequently, prior claims may not be asserted against a successor to property that has been sold free and clear of interests. *In re Lady H Coal Company, Inc.,* 199 B.R. at 605.

In this case, the Sale Order provided in part as follows:

1. The Purchased Assets included the accounts receivable listed on Exhibit "B" to the Sale Order. (Sale Order, p. 7). The accounts receivable listed on Exhibit "B" included a receivable and retention related to the TIA C–Integration project in the amounts of $67,465.00 and $89,760.00, respectively.

2. Dean assumed responsibility and liability for performance of the Assumed Construction Projects listed on Exhibit "A" to the Sale Order. (Sale Order, p. 8). The TIA C–Integration project was listed as an Assumed Construction Project on Exhibit "A."

3. Upon closing, the Purchased Assets shall be transferred to Dean free and clear of all debts, liabilities, and claims of any nature, including any claimed rights of set-off arising out of the rejection of a construction contract that was not assumed pursuant to the sale. (Sale Order, p. 10).

4. Upon closing, the assets subject to the sale shall be transferred to Dean free and clear of all debts arising from any acts of the Debtor, claims as defined in the Bankruptcy Code, and any right of set-off arising from the rejection of any construction contract that was not assumed in connection with the sale. (Sale Order, pp. 10–11).

5. Pursuant to § 105, § 363(b), § 363(f), § 365(a), § 365(b), and § 365(f), the Debtor was authorized to assign the Assumed Contracts to Dean, and Dean was authorized to assume the Contracts free and clear of any liens. (Sale Order, p. 11).

(Doc. 364, Sale Order). In the Order, the Court granted the Debtor's Motion to sell the assets "pursuant to 11 U.S.C. § 363 free and clear of all liens, claims, and encumbrances."

Based on § 363(f) and the terms of the Sale Order, the Court finds that Dean purchased the Airport Subcontract and the

associated receivable free and clear of Skanska's setoff claim.

The closing of the sale terminated Skanska's right of setoff as against Dean and the receivables acquired by Dean.

The Court's conclusion in this regard is consistent with the decisions reached in *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252 (3d Cir. 2000) and *Schneider National, Inc. v. Bridgestone/Firestone, Inc.,* 200 F.Supp.2d 1006 (E.D.Wis.2001). In those cases, the Courts concluded that a claimant "may only obtain a setoff following a free and clear sale if the setoff was actually obtained prior to the bankruptcy filing." *Schneider National v. Bridgestone/Firestone,* 200 F.Supp.2d at 1011.

■ In other words, a claimant's setoff rights are extinguished by a sale free and clear of liens under § 363(f) of the Bankruptcy Code, unless the claimant had exercised its right of setoff before the debtor filed its bankruptcy petition. *Folger Adam Security v. DeMatteis/MacGregor,* 209 F.3d at 263.

The record in this case does not indicate that Skanska effectuated a setoff prior to the filing of the Debtor's bankruptcy case. Consequently, the Airport Subcontract and the related receivable were sold to Dean free and clear of any right of setoff claimed by Skanska, and Skanska may not withhold the amounts due to Dean for work completed on the Airport Subcontract.

**II. To the extent that Skanska possesses any right of setoff, the claim attaches to the sale proceeds held by the Debtor.**

■ The Court has found that Skanska may not assert its right of setoff against the amounts that are due under the Airport Subcontract that was sold to Dean.

On the contrary, any right of setoff possessed by Skanska may only be asserted against the proceeds of the sale that are held by the Debtor.

■ Pursuant to sales "free and clear" of interests under § 363(f) of the Bankruptcy Code, a claimant's interest in property is "detached from the asset to be sold, and then may be reattached to the cash or in-kind proceeds of sale that the trustee receives. As a matter of statute or under general equitable principles, the remedy has been a part of American bankruptcy law for well over a century." *In re Eveleth Mines,* 312 B.R. at 649–50.

"The commonly accepted method for adequate [sic] protecting a secured creditor when a sale is authorized under § 363(f) is to order the liens to attach to the proceeds of the sale." *In re Collins,* 180 B.R. 447, 452 (Bankr.E.D.Va.1995)(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787.).

"The well established rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property *and that any claims against the property attach to the proceeds."* *In re Lady H Coal Company, Inc.,* 199 B.R. at 605(Emphasis supplied). "Extensive case law exists that claims are directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a successor." *Id.* at 605. See also *In re Trans World Airlines, Inc.,* 275 B.R. 712, 718–19 (Bankr.D.Del.2002).

It appears well-settled that claims against property are "detached" from the asset upon a sale "free and clear" of interests under § 363(f), and that the claim is transferred to the proceeds of the sale received by the debtor.

In this case, therefore, the Court finds that Skanska's right of setoff attached to the proceeds of the sale of the Airport Subcontract to Dean, and Skanska may only assert its right of setoff against the proceeds of the sale that are held by the Debtor.

The Court recognizes, of course, that other parties may also assert claims against the sale proceeds, and that disputes may arise regarding the relative priority of the competing claims. The Debtor has filed a Complaint against Skanska to Determine the Validity, Priority, or Extent of a Lien or other Interest in Property, however, so that the issues regarding the validity and priority of Skanska's setoff rights may be resolved in the context of the adversary proceeding. (Adv. No. 05–661).

## Conclusion

The Debtor sold the Airport Subcontract to Dean pursuant to a sale free and clear of liens under § 363(f) of the Bankruptcy Code. The sale included a receivable in the approximate amount of $169,235.00, representing work that had been completed by the Debtor. The issue in this case is whether Skanska is permitted to assert a right of setoff against the receivable purchased by Dean.

The Court finds that Dean purchased the Airport Subcontract free and clear of the right of setoff asserted by Skanska, and that Skanska may not withhold the receivable from Dean based on the assertion of the right.

The Court also finds, however, that any right of setoff possessed by Skanska attaches to the proceeds of the sale held by the Debtor, and that Skanska may assert the right against such proceeds.

The Court makes no findings regarding the merits of Skanska's setoff rights. To the extent that the validity and priority of

Skanska's claim must be resolved, such issues should be determined in the separate adversary proceeding commenced by the Debtor.

Accordingly:

**IT IS ORDERED** that:

1. M.C. Dean, Inc.'s Motion for Reduction of the Purchase Price and Refund from the Debtor, or Alternatively, Reconsideration and Clarification of July 6, 2005 Order, is granted in part and denied in part as set forth in this Order.

2. Skanska USA Building, Inc.'s Cross–Motion for Further Determination of Setoff and Related Rights is granted in part and denied in part as set forth in this Order.

3. The Airport Subcontract and related receivable was sold to M.C. Dean, Inc. free and clear of the setoff right asserted by Skanska USA Building, Inc., and Skanska may not assert any right of setoff against the amounts due to Dean under the Airport Subcontract.

4. To the extent that Skanska USA Building, Inc. possesses a right of setoff, such claim attaches to the proceeds of the sale to Dean of the Airport Subcontract, and Skanska may assert its right of setoff only against the proceeds of the sale held by the Debtor.