In the Matter of David John
SCHWEDA, Debtor.

MacDILL AIR FORCE BASE FEDER-
AL CREDIT UNION, Plaintiff,

v.

David John SCHWEDA, Defendant.

Bankruptcy No. 79–1555.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

April 15, 1982.

Neil Spector, Tampa, Fla., for plaintiff.

Shirley Arcuri, Tampa, Fla., for defend-ant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding insti-tuted by the Plaintiff, MacDill Air Force Base Federal Credit Union (Credit Union) against David John Schweda, (Debtor), the Debtor in the above-captioned Chapter 7 proceeding. The Complaint filed in this matter seeks to revoke the Debtor's dis-charge pursuant to § 727(d)(1) of the Bank-ruptcy Code.

Based on the evidence adduced at trial and the record of this case, the Court finds as follows:

The Credit Union is a creditor of the Debtor by virtue of a judgment rendered by this Court declaring a debt in the amount of $1,500 to be nondischargeable pursuant to § 523(a)(2)(B) of the Code and by virtue of an unsecured, signature loan in the approxi-mate amount of $5,000.

On October 22, 1979, the Debtor conveyed his residence located in Apollo Beach, Flori-da to one Naveen Malhotra. As considera-tion for this sale, Mr. Maholtra agreed to assume an existing mortgage in the amount of $26,000; the Debtor also received cash in the amount of $17.92. Although this trans-action occurred only one week prior to the filing of the petition, the Debtor did not disclose the transfer in his statement of affairs. When asked by counsel why he did not reveal this transfer the Debtor replied that he forgot about the transaction. The Debtor did disclose the transfer at the § 341 meeting of creditors which was held on November 26, 1979, but when questioned about the transaction he testified that he "believed" the name of the purchaser was a Mr. Maholtra, thus indicating that he was not acquainted with the purchaser. It ap-pears, however, that the Debtor knew Mr. Maholtra who was an instructor at Colum-bia College in St. Petersburg where he taught a real estate course which was at-tended by the Debtor. Indeed, the record reveals that Mr. Malhotra and the Debtor even discussed the possibility of bankruptcy and that Malhotra suggested to the Debtor that he should further research bankruptcy proceedings in the library.

On November 1, 1979, shortly after the transfer of the property to Malhotra, Ms.

Marion Montemarano moved into the residence pursuant to a one year lease. At that time, Ms. Montemarano was the girlfriend of the Debtor whom she had met four months earlier in July of 1979. Although Ms. Montemarano initially testified that she neither knew that the Debtor had previously owned the home nor that he had sold it to Malhotra until mid-December of 1979, she subsequently recanted her testimony when confronted with a prior inconsistent statement that at the end of October she had been cleaning up the mess left in the house by the former Mrs. Schweda. It is also without dispute that Ms. Montemarano accompanied the Debtor one day a week to the real estate course taught by Malhotra.

In mid-December, the Debtor moved back into the home with Ms. Montemarano and on January 10, 1980, Ms. Montemarano purchased the home from Malhotra by assuming the first mortgage and executing a purchase money second mortgage in the amount of $10,500 in favor of Malhotra. It is also apparent that after this transfer the Debtor made repairs to the residence and that he made several mortgage payments on both the first and second mortgages notwithstanding the fact that Ms. Montemarano was the owner of record of the property. On March 7, 1980, the Debtor and Ms. Montemarano were married.

The petition for relief of the Debtor was filed on November 1, 1979, and on July 31, 1980, the Debtor received his discharge.

These are the facts as appear from the record which, according to the Credit Union warrant a revocation of the discharge of the Debtor heretofore entered based upon § 727 of the Bankruptcy Code.

Section 727(a)(6) of the Code provides in pertinent part as follows:

"On request of the trustee or a creditor and after notice and a hearing, the Court shall revoke a discharge granted under subsection (a) of this Section if—

(1) such discharge was obtained through the fraud of the debtor *and the requesting party did not know of such fraud until after the granting of such discharge.*" (emphasis supplied)

In support of the contention that the discharge should not be revoked, counsel for the Debtor advances several arguments. First, she urges that both the transfer to Malhotra and the subsequent transfer to Montemarano were matters of public record and, therefore, there was nothing hidden or concealed about the transaction. However, this argument of record notice misses the mark because a search of the public record would not disclose a secret interest retained by the Debtor. Second, the Debtor contends that the original transfer to Malhotra was supported by consideration and, therefore, the Plaintiff failed to establish that this transfer was fraudulent. No citation of authority is necessary to support the obvious fact that consideration, whether adequate or illusory, is insufficient to cleanse a transaction of fraud if the transaction is, in fact, a sham. The fact that the Debtor received $17.92 and that Malhotra assumed the existing mortgage in no way precludes a finding that the Debtor, Malhotra and Montemarano acted in collusion to conceal an asset from the reach of the creditors. Next, the Debtor argues that the disclosure of the transfer to Malhotra at the § 341 meeting of creditors negates concealment. This argument must also fail considering the incompleteness of the disclosure and the manifest lack of candor on the part of the debtor with regard to his prior relationship with Malhotra. The inference is easily drawn that the Debtor intended to deceive the creditors at the § 341 meeting by implying that the Malhotra transfer involved a purchaser who was a stranger to the Debtor and that the transfer was bona fide. Neither did the disclosure at the § 341 meeting reveal the Debtor's present wife would acquire the property from Malhotra.

The Debtor also argues, citing *In the Matter of Leach*, 197 F.Supp. 513 (W.D.Ark. 1961), that a finding of fraud is only appropriate if the Plaintiff demonstrates that the original transfer to Malhotra was fraudulent and that the fact Malhotra later sold the house to Montemarano and that the Debtor then married her and moved back

into the house cannot change the character of the original transaction. Along the same line, the Debtor urges that since the Plaintiff learned of the initial sale to Malhotra at the § 341 meeting, it had knowledge of the fraud prior to the granting of the discharge and, therefore, is barred from bringing this action because of the requirement of § 727(d)(1) that a party must have learned of the fraud *after* the granting of the discharge. Yet, it is clear that knowledge of the transfer to Malhotra is not tantamount to knowledge of the fraud. Rather, it was only when all relevant events became known that the fraudulent scheme became evident. As the Court stated in *In the Matter of Vecchione*, 407 F.Supp. 609 (E.D. N.Y.1976):

> "Persons whose intention it is to shield their assets from creditor [sic] attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct." at pg. 615.

It is clear from the testimony of the Plaintiff's legal coordinator, Rose Ann Taylor, that the Plaintiff did not learn of the fraud until the latter part of March of 1981, well after the discharge was granted, when inquiries were being made concerning the whereabouts of the Debtor in an effort to collect the $1,500 judgment rendered by this Court in a prior adversary proceeding.

In light of the evidence adduced at the trial, this Court is satisfied that the transfer by the Debtor to Montemarano was a sham and was done for the purpose of concealing this property in order to prevent its loss through liquidation by the Trustee and that the Debtor, in collusion with Mr. Malhotra and Ms. Montemarano, now Mrs. Schewda, knowingly and fraudulently concealed his interest in the residence where he now resides. Therefore, the Debtor's discharge should be revoked.

A separate final judgment will be entered in accordance with the foregoing.