PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-3607

In re:  REVEL AC INC., et al.,
Debtors

IDEA BOARDWALK, LLC

v.

REVEL ENTERTAINMENT GROUP, LLC;
POLO NORTH COUNTRY CLUB, INC.

Polo North Country Club,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-16-cv-08683)
District Judge: Honorable Michael A. Shipp

Argued September 26, 2018

Before: AMBRO, CHAGARES,
and GREENAWAY, JR., Circuit Judges

(Opinion filed: November 30, 2018)

Stuart J. Moskovitz          [Argued]
4400 Route 9 South, Suite 1000
Freehold, NJ   07728

          Counsel for Appellant

Jeffrey A. Cooper          [Argued]
Barry J. Roy
John H. Harmon
Rabinowitz Lubetkin & Tully
293 Eisenhower Parkway, Suite 100
Livingston, NJ   07039

          Counsel for Appellee

OPINION OF  THE  COURT

AMBRO, Circuit Judge

We determine whether the operator of two nightclubs and a beach club at the Revel casino in Atlantic City, New Jersey, may reduce its outstanding rent obligations based on "recoupment" payments that the initial owner of the casino—Revel AC, Inc.—agreed to make under a complex commercial lease before it filed for Chapter 11 bankruptcy.  The Bankruptcy Court and District Court both held that the nightclub operator is permitted to reduce its rental obligations

2

under a tenant-protective provision of the Bankruptcy Code, 11 U.S.C. § 365(h), and the doctrine of equitable recoupment. We affirm on both grounds.

## I.     Background

### A.  Facts and Procedural History

When Revel entered Chapter 11 in 2014, one of its tenants, plaintiff-appellee IDEA Boardwalk, LLC, continued to operate two nightclubs and a beach club on the casino premises.  As Revel worked through its bankruptcy, IDEA sought to protect its right to continue operating on the casino premises under a long-term lease (the "Lease") by filing an adversary proceeding in the Bankruptcy Court.  IDEA initially filed against Revel as the owner, but defendant-appellant Polo North Country Club, Inc., became the defendant in the proceeding (and IDEA's landlord under the Lease) when it purchased Revel's assets, including the casino, for a small fraction of the casino's building cost per a purchase agreement dated March 20, 2015 (the "Purchase Agreement" or "Agreement").  The Bankruptcy Court approved the sale shortly thereafter (the "Sale Order").

The Purchase Agreement provided that Polo would purchase Revel's assets free and clear of all liabilities except for those listed in the Agreement.  As relevant here, it stated that Polo's only surviving liability with respect to the Lease would be a potential liability to IDEA for an administrative expense claim up to a specified maximum amount.  (Purchase Agreement § 2.3(f).)  The Agreement also stated that Polo would acquire certain legal claims Revel may have against IDEA with respect to the Lease (*id.* § 2.1(m)), which the parties understand to include any rent payments that IDEA may still owe under the Lease.

3

The Sale Order generally authorized Polo's purchase of Revel's assets "free and clear of all liens, claims, encumbrances and other interests of any kind" under § 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f). (Sale Order ¶ 6.) In light of prior litigation concerning the rights of tenants on Revel's properties,[1] the Sale Order also contained two carve-out provisions that expressly preserved certain rights relating to IDEA's continued use of the casino premises under the Lease. The first carve-out preserved "[a]ny rights (including rights of setoff and recoupment), claims and defenses of IDEA . . . with respect to [IDEA's adversary proceeding against Revel]." (*Id.* ¶ 14.) The second reserved "any rights elected to be retained by [IDEA or other tenants] pursuant to section 365(h) of the Bankruptcy Code" after Revel's rejection of the governing tenancy agreements, including, in IDEA's case, the Lease. (*Id.* ¶ 18.)

The Sale Order's carve-out of these tenant rights set the stage for further litigation between IDEA and Polo concerning IDEA's rights and obligations as Polo's tenant under the Lease. Shortly after entering the Sale Order, the Bankruptcy Court granted a long-pending motion by Revel to reject the Lease retroactively to September 2, 2014, the date on which the Revel casino closed its doors. In response to that order, IDEA filed a notice of its election to retain its rights as a tenant under § 365(h) of the Code, as expressly allowed by the Sale Order. IDEA also asked the Bankruptcy Court to clarify its rights as a

---

[1] Polo first tried to purchase Revel's assets under a sale order that would have extinguished IDEA's possessory rights under the Lease. That order was stayed by our Court in a prior decision, *see In re Revel AC, Inc.*, 802 F.3d 558, 575 (3d Cir. 2015), and superseded by the Sale Order we now review.

4

tenant after Revel's rejection of the Lease and sale of the casino to Polo.

In an omnibus order in June 2015, the Bankruptcy Court clarified major aspects of the post-petition landlord–tenant relationship between IDEA and Polo. That order substantially narrowed the litigation between IDEA and Polo but left open an important question about the rights IDEA retained under the Lease—namely, whether IDEA is permitted to deduct from its outstanding rent obligations certain "recoupment" amounts owing to IDEA under the Lease. To seek the Bankruptcy Court's clarification on this point, IDEA filed a motion for summary judgment on one of its pending claims in the adversary proceeding. The Bankruptcy Court granted in part IDEA's motion for summary judgment, declaring that: (i) IDEA may "offset (against rent) any damages caused, after rejection, by [Polo's] nonperformance" under the Lease; and (ii) it may "apply and setoff the Recoupment Amount, as defined in the Lease, for both the period prior to [Polo's] acquisition of title and after."

The Bankruptcy Court's ruling that IDEA may reduce its rent obligations by the recoupment amounts under the Lease, which is the only aspect of the Bankruptcy Court's summary judgment order on appeal, gave two independent grounds: (1) the recoupment provisions of the Lease "fall within the ambit of rights preserved under Code § 365(h)(1)(A)(ii)," *In re Revel AC, Inc.*, 2016 WL 6155903, at *11 (Bankr. D.N.J. Oct. 21, 2016); and (2) IDEA could deduct amounts based on the equitable doctrine of recoupment. *Id.* at *11–12. Polo appealed to the District Court the Bankruptcy Court's grant of summary judgment, which affirmed on the same two grounds. It now appeals to us.

5

## B.  The Lease

The Lease is long and neither simple nor direct.  Indeed it is an almost impenetrable web of formulas, defined terms, and cross-references—a "bloated morass," in the words of the Bankruptcy Court.  We accordingly do not recite the Lease provisions verbatim, but instead summarize its relevant provisions, which relate to capital contributions, rent obligations, and recoupment obligations.[2]

*Capital contributions.*  The Lease contemplated that both Revel and IDEA would make capital contributions to "build out" the IDEA venues before opening them.  (Lease § M(a).)  The total budget for this build-out was roughly $80 million, with Revel responsible for about $48 million and IDEA bound for $16 million.  (*Id*.)  The remaining $16 million would either be contributed by IDEA (at IDEA's option) or by Revel if IDEA did not make the contribution.  (*Id.* § M(b).)  These capital contributions—and, in particular, the relative proportions of capital contributed by IDEA and Revel—were the foundation for rent and recoupment calculations under the Lease (described below).

*Rent obligations.*  The Lease contemplated that IDEA would pay rent to Revel each month on a venue-by-venue basis.  IDEA's capital contribution was apportioned among its

---

[2] We make one clarification concerning our use of the term "recoupment."  We use "recoupment amounts" to describe Revel's contractual obligation under the Lease to make certain recoupment payments because the Lease itself uses the term "recoupment."  However, this contractual obligation is not the same as the concept of "equitable recoupment," which is an equitable doctrine from the common law (as we discuss below).

6

three venues based on certain percentages specified in the Lease. (*Id.* Ex. K.) Then, each month, the rent for a given venue was calculated to be the distributable cash flow from that venue multiplied by the percentage share of capital contributed to that venue by Revel as part of the pre-opening build-out. (*Id.* § C.1(a)(i).)

*Recoupment obligations*. Under the Lease, Revel would make certain "recoupment" payments to IDEA in the first four years of the Lease term. These occurred every three months for IDEA's two nightclubs and twice a year for the beach club. (*Id.* § C.1(d)(vi).) On each of the calculation dates, IDEA and Revel would determine (a) whether the venue in question had reached a certain threshold in gross sales, and (b) whether it had registered a positive return on capital investment, as measured by comparing the venue's year-to-date distributable cash flow (as defined in the Lease) to the portion of IDEA's capital contribution allocated to that venue for the time period in question using a straight-line depreciation over four years. (*Id.* §§ C.1(a)(i)(1), C.1(d).) For each of these calculation dates, if the venue met the applicable gross-sales threshold but did not have a positive return to capital net of depreciation, Revel would refund to IDEA the amount necessary to cause the latter to break even for that period. (*Id.*)

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 158(a). *In re Truong*, 513 F.3d 91, 93 (3d Cir. 2008) (*per curiam*). We have jurisdiction per 28 U.S.C. § 158(d)(1) and exercise the same standard of review as did the District Court. *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012). It reviewed the Bankruptcy Court's grant of summary judgment *de novo*. *See In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017). We do the same.

7

## III.  Discussion

The Bankruptcy Court and the District Court both ruled that IDEA has a right to reduce its rent obligations to Polo by the amount of Polo's recoupment obligations under the Lease. Both Courts based this ruling on two independent grounds: First, the tenant rights that IDEA retained by making an election under § 365(h) of the Bankruptcy Code include the right to reduce its rent obligations by the recoupment amounts. Second, even if § 365(h) did not extend to the recoupment amounts, IDEA would be permitted to reduce its rent obligations under the doctrine of equitable recoupment.

### A.  Section 365(h) Election

Section 365 of the Bankruptcy Code governs a debtor's rejection of executory contracts and unexpired leases during bankruptcy.  Subsection (h) protects a tenant whose landlord files for bankruptcy and then rejects the tenant's lease.  In relevant part, it provides that

> [i]f the trustee[3] rejects an unexpired lease of real property under which the debtor is the lessor . . . [and] the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or

---

[3] With narrow exceptions not relevant here, rights and powers given to a trustee under Chapter 11 of the Code may be exercised as well by a debtor in possession (here Revel, as the debtor) when no trustee is appointed for the debtor's estate. *See* 11 U.S.C. § 1107(a).

8

appurtenant to the real property for the balance of the term of such lease . . . .

11 U.S.C. § 365(h)(1)(A)(ii).

In the Sale Order approving Revel's sale of assets to Polo, the Bankruptcy Court expressly preserved "any rights elected to be retained by [IDEA or other tenants] pursuant to section 365(h) of the Bankruptcy Code" after the debtor's rejection of the governing tenancy agreements, including the Lease. (Sale Order ¶ 18.) And IDEA preserved those rights by making an election under § 365(h) when the Bankruptcy Court approved Revel's motion to reject the Lease.

Under subsection (h), the rights IDEA reserved under the Lease include those "relating to the amount and timing of payment of rent and other amounts payable by the lessee." 11 U.S.C. § 365(h)(1)(A)(ii). As we have explained previously, a tenant who makes an election under this provision is "entitled to remain under the same rental terms as are set forth in the lease." *Megafoods Stores, Inc. v. Flagstaff Realty Assocs.* (*In re Flagstaff Realty Assocs.*), 60 F.3d 1031, 1034 (3d Cir. 1995) (quoting *In re TM Carlton House Partners*, 97 B.R. 819, 823 (Bankr. E.D. Pa. 1989)).

There is no doubt the "rental terms" under which IDEA leased the venue premises include the right to receive recoupment payments under the Lease. Although it contains distinct provisions addressing "rent" and "recoupment," they are inextricably related and combine to establish IDEA's rental terms under the Lease. In their net effect, the rent and recoupment provisions ensured that IDEA would pay rent in the first four years of the Lease term only when an IDEA venue turned a profit (as measured by the year-to-date distributable cash flow from the venue and accounting for the depreciation of capital that IDEA contributed to that venue). To render the

9

"recoupment" component of this framework inoperative, while still calculating the "rent" component using the same formulas, would upend the rent framework established in the Lease and deny IDEA's statutory right to remain in possession of the premises under the same "rental terms." *Flagstaff*, 60 F.3d at 1035. Accordingly, by virtue of its election under § 365(h), IDEA is permitted to reduce its rent obligations by the recoupment amounts applicable under the Lease for the balance of the term of the Lease after the date of rejection— *i.e.*, after September 2, 2014.[4]

## B. Equitable Recoupment

The doctrine of equitable recoupment "is not codified in the Bankruptcy Code, but has been established through decisional law." *In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999) (quoting *Flagstaff*, 60 F.3d at 1035). When a claim against a debtor qualifies for equitable recoupment, the claim "avoids the usual bankruptcy channels," in that it receives full value in the netting of obligations between a creditor and the debtor without regard to the bankruptcy priority of the claim—"thus, in essence, [the claim] is given priority over other creditors'

---

[4] We note that, in addition to the general tenant protections in § 365(h)(1)(A)(ii), another provision addresses a tenant's right to reduce its rent obligations under a rejected lease based on the landlord's nonperformance of its obligations under the lease after the rejection. *See* 11 U.S.C. § 365(h)(1)(B). Although we need not rest our decision on this particular provision, we note that it appears to provide another basis on which IDEA could reduce its rent obligations based on the recoupment amounts under the Lease, assuming, as the record suggests, that Revel ceased to perform its recoupment obligations after moving to reject the Lease.

claims." *Flagstaff*, 60 F.3d at 1035; *see also In re Anes*, 195 F.3d at 181–82 (discussing equitable recoupment).[5]

Recoupment means "the setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting 4 COLLIER ON BANKRUPTCY § 553.03, at 553-15 to -17 (emphasis added by *Univ. Med. Ctr.*)). For purposes of equitable recoupment, "a mere logical relationship is not enough: the 'fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the same transaction.'" *Id.* at 1081 (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). "Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.*

IDEA contends that the doctrine of equitable recoupment requires reducing its existing rent obligations by Polo's recoupment obligations. We agree. As summarized above, the rent and recoupment provisions created a rental framework that ensured IDEA would pay rent in the first four years of the Lease term only when a venue made profit as measured by a formula set out in the Lease. To give effect to this framework, the recoupment provisions of the Lease performed a periodic downward adjustment to IDEA's rent obligations under the Lease. Given this countervailing relation between the rent obligations and recoupment amounts under

---

[5] For this reason, we have pointed out that equitable recoupment, "as a non-statutory, equitable exception to the automatic stay, should be narrowly construed." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1081 (3d Cir. 1992).

the Lease, there is no question the rental obligations and recoupment amounts "aris[e] from the same transaction," *Univ. Med. Ctr.*, 973 F.2d at 1079 (citation and emphasis omitted), for purposes of equitable recoupment. In this context, we also have no trouble concluding it would be inequitable to require IDEA to pay the full amount of its rental obligations without applying the countervailing downward adjustments contemplated by the recoupment provisions. *See Flagstaff*, 60 F.3d at 1035 (ruling that tenant could reduce its rent under the doctrine of equitable recoupment based on the cost of making repairs the bankrupt landlord was obligated to make, because "[b]oth the claim for repair costs and the rent arise from the lease, and it would be inequitable for the landlord to receive rent without compensating [the] tenant for undertaking repairs").

That Polo obtained Revel's assets "free and clear of all liens, claims, encumbrances and other interests of any kind" in a sale under Code § 363(f) does not change the result. The Sale Order expressly preserved "[a]ny rights (including rights of setoff and recoupment), claims and defenses of IDEA . . . with respect to [IDEA's adversary proceeding against Revel]." (Sale Order ¶ 14.) That preserved IDEA's assertion of equitable recoupment here. Further, as we have explained in prior cases, the doctrine of equitable recoupment is an affirmative defense, and the sale of assets "free and clear" of liens, encumbrances, and interests "does not include defenses to claims." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257, 258–64 (3d Cir. 2000); *accord In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) ("[A] right of recoupment is a defense and not an interest and therefore is not extinguished by a § 363(f) sale." (quoting *Folger*, 209 F.3d at 261)).

In short, IDEA is entitled to reduce its rent obligations by the recoupment amounts under the Lease based on the

doctrine of equitable recoupment. We also clarify that equitable recoupment applies to rent and recoupment amounts under the Lease regardless whether they arose before or after Revel filed its bankruptcy petition and regardless whether they arose before or after Revel rejected the Lease.[6]

\* \* \* \* \*

When IDEA agreed to operate two nightclubs and a beach club at the Revel casino, it agreed under the Lease to pay rent only when its venues met certain financial benchmarks. Section 365(h) of the Bankruptcy Code and the doctrine of equitable recoupment entitled IDEA to continue paying rent on those same terms even after its landlord filed for bankruptcy and rejected the Lease. Nothing in the agreements or court orders governing third-party Polo's purchase of the casino in bankruptcy changes this result. We therefore affirm, holding that IDEA may reduce its rent obligations by the recoupment amounts provided under the Lease.

---

[6] For the avoidance of any doubt, we do not hold that IDEA is entitled to recover affirmatively any recoupment amount from Polo. Rather, IDEA's rights under § 365(h) and the equitable recoupment doctrine are limited to giving IDEA the right to reduce its rent obligations to Polo. Nothing in this opinion should be construed to allow IDEA to recover any additional monies from Polo (such as for the recoupment of capital contributions) beyond the reduction of rent that IDEA owes to Polo under the Lease.