**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1294
_____

IN RE: DARYL R. ROTHMUND

JENZACK PARTNERS, LLC

v.

DARYL R. ROTHMUND,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-21-cv-04064)
District Judge:  Honorable Jeffrey L. Schmehl

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 9, 2023

Before:  KRAUSE, FREEMAN, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed February 15, 2024)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge*.

In this appeal, Daryl Rothmund challenges the Bankruptcy Court's order that granted Jenzack Partners, LLC's summary judgment motion requesting revocation of Rothmund's Chapter 7 discharge. Section 727(d)(1) of the United States Bankruptcy Code requires that the Bankruptcy Court revoke the discharge of a debtor who obtained that discharge through fraud, but only if the requesting party proves that it did not know of the fraud until *after* the debtor received that discharge. *See* 11 U.S.C. § 727(d)(1). The Bankruptcy Court erred, Rothmund argues, by holding that the undisputed facts showed Jenzack lacked predischarge knowledge of Rothmund's alleged fraud. Because Rothmund fails to point to evidence sufficient to create a genuine dispute of material fact about Jenzack's predischarge knowledge, we will affirm.

I.      **BACKGROUND**

On April 2, 2018, Rothmund filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. In the years before Rothmund's bankruptcy filing, Jenzack had been seeking to execute an assigned judgment against Rothmund and several entities in which he held an interest, including the following Pennsylvania corporations: Automatic Empire, LLC ("AE"), International Building Management Group, LLC ("IBMG"), and International Building Group, LLC ("IBG").

On December 9, 2014, in aid of executing Jenzack's judgment against Rothmund, the Philadelphia County Court of Common Pleas entered an order charging Rothmund's interest in AE, among other companies (the "First Charging Order"). The First Charging Order appointed Jenzack's counsel as the receiver and authorized Jenzack, or its counsel,

to make inquiries into the profits, distributions, and money due, or to fall due, to Rothmund involving AE. On March 23, 2018, the Court of Common Pleas entered a second charging order, which charged Rothmund's interest in IBMG and IBG (the "Second Charging Order").

Roughly two weeks after the Court of Common Pleas entered the Second Charging Order, Rothmund filed for bankruptcy. On June 5, 2018, Jenzack filed a motion under Federal Bankruptcy Rule 2004 seeking to examine Rothmund under oath and require that he produce certain financial documents (the "2004 Motion").[1] Then, on July 12, 2018, with the 2004 Motion still pending, the Bankruptcy Court granted Rothmund a discharge.

On July 25, 2018, the Bankruptcy Court granted the 2004 Motion, and on September 6, 2018, Jenzack examined Rothmund. On July 10, 2019, Jenzack initiated an adversary proceeding against Rothmund seeking revocation of his discharge under § 727 of the Bankruptcy Code. Jenzack alleged that Rothmund provided false information to the Chapter 7 Trustee and Bankruptcy Court, failed to disclose assets, and concealed the truth about his finances to avoid his obligations to pay creditors. Thereafter, Jenzack obtained documents that AE produced to a third party in an unrelated litigation. These

---

[1] Federal Rule of Bankruptcy Procedure 2004 is "the basic discovery device in bankruptcy cases. It allows examination of any entity on a motion filed with the court pursuant to Rule 2004(a)." 9 *Collier on Bankruptcy* ¶ 2004.01 (16th ed. 2023); *see also* Fed. R. Bankr. P. 2004(a).

documents revealed an outstanding receivable that AE owed to IBG for $480,306.71 (the "AE Receivable").

On November 27, 2019, Rothmund filed a mechanics' lien on behalf of IBG for $1,085,964.89 (the "Mechanics' Lien"). Attached to the Mechanics' Lien was a pre-petition contract between IBG and Quad-Two Partnership for a real estate development project, known as Fitler Nine. Also attached was a verification signed by Rothmund, under penalty of perjury, stating that IBG provided supplies to Quad-Two as recently as June 10, 2019.

On December 24, 2020, Jenzack moved for summary judgment, arguing that Rothmund concealed his assets and income to evade execution of Jenzack's judgment and his obligation to pay creditors. Rothmund opposed Jenzack's motion on the ground that § 727(d)(1) barred Jenzack's request for revocation because Jenzack knew about the alleged fraud predischarge. 11 U.S.C. § 727(d)(1).

The Bankruptcy Court agreed with Jenzack and granted its motion for summary judgment. In its ruling, the Bankruptcy Court relied on the undisputed fact that Rothmund failed to disclose two known assets—payments owed to IBG under a pre-petition contract for services performed as recently as June 2019 and the AE Receivable—which, together, totaled almost $1.6 million and would have otherwise been available for distribution to creditors.[2] Furthermore, the Bankruptcy Court held that

---

[2] Rothmund's current ownership interests in IBG, IBMG, and AE are unknown, but his affidavit and schedules indicate that he owns a 100% interest in IBG and IBMG and a 50% interest in AE.

Jenzack could not have known of Rothmund's alleged fraud because the information only became available to Jenzack post-discharge. Rothmund appealed the Bankruptcy Court's order to the District Court.

The District Court held that Rothmund failed to "create an issue of material fact" regarding Jenzack's predischarge knowledge and affirmed the Bankruptcy Court's summary judgment order. Rothmund then timely filed this appeal.

## II.    DISCUSSION[3]

To resolve this appeal, we must determine (1) the issues properly preserved for appeal and (2) whether Rothmund pointed to sufficient evidence to create a genuine dispute of material fact about Jenzack's knowledge of the alleged fraud for purposes of revocation under § 727(d)(1). We address each question in turn.

### A.    Preservation of Issues

In his opening brief, Rothmund lists 11 issues presented. Jenzack responds that Rothmund raised only one issue before the Bankruptcy Court—Jenzack's predischarge knowledge. Thus, Jenzack argues that Rothmund cannot raise any other issues for the first time on appeal. We agree with Jenzack.

Third Circuit precedent establishes "that arguments raised for the first time on appeal are not properly preserved for appellate review." *Simko v. U.S. Steel Corp*, 992

---

[3] We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. The District Court had jurisdiction under 28 U.S.C. § 158(a). The Bankruptcy Court had jurisdiction under 28 U.S.C. § 1334(b). We review the decision to grant summary judgment de novo. *See Idea Boardwalk, LLC v. Revel Ent. Grp. (In re Revel AC Inc.)*, 909 F.3d 597, 601 (3d Cir. 2018).

F.3d 198, 205 (3d Cir. 2021) (collecting cases). Rothmund's brief in opposition to summary judgment and oral argument to the Bankruptcy Court show that he only raised arguments about Jenzack's predischarge knowledge. For example, Rothmund's brief has only one section presenting arguments on why the District Court should deny Jenzack's motion for summary judgment. That section is titled, "Debtor's Discharge Should Not be Revoked Pursuant to 11 U.S.C. § 727(d)." App. 2066. And the succinct summation of that section states, "[T]he Creditor has not met its burden to prove *the second required element*[4] when granting a § 727(d) revocation . . . . Therefore, it has also not met its burden to prove there is no dispute of material facts so its motion for summary judgment in this case should also be rejected." App. 2070 (emphasis added). Similarly, during oral argument, Rothmund stated, "Your Honor, the issue in dispute is whether the plaintiff did know or not know something. That's the issue in dispute simply put." App. 2105. Thus, we will only consider Rothmund's arguments about Jenzack's predischarge knowledge.[5]

---

[4] The second required element is that "the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1).

[5] Jenzack argues that Rothmund's failure to raise the remaining arguments before the Bankruptcy Court constitutes a waiver. As explained above, we agree that Rothmund failed to properly preserve arguments other than those regarding Jenzack's predischarge knowledge. We need not decide, however, the proper characterization of Rothmund's failure to preserve the remaining arguments because Rothmund does not respond to Jenzack's waiver argument at all. *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 n.7 (3d Cir. 2017) (distinguishing "waiver" from "forfeiture" and explaining that the distinction between the two carries "great significance" because an appellate court will not reach waived arguments, but we may "resurrect" forfeited arguments in "narrow exceptional circumstances").

Having established the proper scope of Rothmund's appeal, we now turn to whether Jenzack possessed predischarge knowledge of the alleged fraud such that it may not obtain revocation under § 727(d)(1).

## B.    Knowledge of the Alleged Fraud

Section 727(d)(1) of the Bankruptcy Code provides that "[o]n request of the trustee, a creditor, or the United States trustee, . . . the court shall revoke a discharge" if (1) "such discharge was obtained through the fraud of the debtor," and (2) "the requesting party *did not know* of such fraud until after the granting of such discharge."  11 U.S.C. § 727(d)(1) (emphasis added).  Although neither party directly addresses it, there is a split among the courts (bankruptcy and appellate) about the meaning of "did not know" under § 727(d)(1) of the Bankruptcy Code.  On the one hand, most courts have adopted a constructive knowledge standard.  Under this standard, a creditor is deemed to know about the alleged fraud if the creditor knew facts, predischarge, that put it on notice of possible fraud, and the burden is on the creditor to investigate suspicions of fraud before discharge.  *See, e.g.*, *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 887–88 (8th Cir. 1991).[6]  On the other hand, a few courts have held that a creditor must have actual

---

[6] *See also Lancioni v. Faragasso (In re Faragasso)*, No. 16-34107, 2017 Bankr. LEXIS 2200, at *10 (Bankr. D.N.J. Aug. 4, 2017) (explaining that "the policy in favor of a fresh start suggests that a creditor should diligently investigate potential fraud once the creditor learns of facts indicating a fraud"); *Anderson v. Vereen (In re Vereen)*, 219 B.R. 691, 695–97 (Bankr. D.S.C. 1997) (holding that a trustee seeking revocation of a debtor's discharge knew of the alleged fraud predischarge because, among other things, the trustee's "questions and actions throughout his investigations indicate an advanced state of knowledge and indicate at the least, that he was very suspicious [predischarge] that the Debtor had committed fraud") (relying on *Cont'l Builders v. McElmurry (In re McElmurry)*, 23 B.R. 533, 536 (W.D. Mo. 1982) (rejecting a creditor's argument that it

7

knowledge to bar revocation.[7]  That is, a creditor must know—predischarge—all the

relevant facts that constitute the alleged fraud.  *See, e.g.*, *MacDill Air Force Base Fed.*

*Credit Union v. Schweda (In re Schweda)*, 19 B.R. 499, 501 (Bankr. M.D. Fla. 1982)

(rejecting the debtor's argument that a creditor's knowledge of a transaction later deemed

fraudulent equates to knowledge under § 727(d)(1) because "it was only when all

relevant events became known that the fraudulent scheme became evident").  Regardless

of the applicable knowledge standard, if a court determines that a creditor possessed

knowledge of the alleged fraud, § 727(d)(1) bars revocation.  *See, e.g.*, *Anderson v. Poole*

*(In re Poole)*, 177 B.R. 235, 242 (Bankr. E.D. Pa. 1995) (explaining "where the

requesting party fails to sustain its burden of proving that it lacked knowledge of the

fraud prior to the granting of the discharge, the cause of action should be denied"

(cleaned up)).

---

lacked knowledge of the debtor's alleged fraud because the creditor admitted that it suspected fraud based on the debtor's "evasive tactics")); *Staten Island Sav. Bank v. Scarpinito (In re Scarpinito)*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996) (relying on a creditor's discovery requests and filing of a state court action to support a possible finding that the creditor possessed "suspicions or even actual knowledge" about the debtor's alleged fraud); *Lewis v. Cook (In re Cook)*, No. 09-25681-JAD, 2012 WL 1073239, at *1, *3–4 (Bankr. W.D. Pa. Mar. 29, 2012); *Dobin v. Lawrence (In re Lawrence)*, No. 11-1430, 2012 WL 71601, at *1, *5 (Bankr. D.N.J. Jan. 10, 2012) (same); *Sayal v. Faruque (In re Faruque)*, No. 09-1035, 2009 WL 2211210, at *1, *5–6 (Bankr. E.D. Va. July 20, 2009); *Buckeye Ret. Co. v. Heil (In re Heil)*, 289 B.R. 897, 902–03 (Bankr. E.D. Tenn. 2003); *Govaert v. Topper (In re Topper)*, 85 B.R. 167, 169 (Bankr. S.D. Fla. 1988).

[7]  *See, e.g.*, *Ross v. Mitchell (In re Dietz)*, 914 F.2d 161, 164 (9th Cir. 1990) (affirming revocation when a trustee possessed facts relevant to the existence of fraud before discharge, but only learned of the fraud after discharge).

We have not defined "did not know" for purposes of revocation under § 727(d)(1) of the Bankruptcy Code. And despite the lack of precedential authority, neither party argues for one knowledge standard over the other. But we need not interpret the meaning of "did not know" to resolve this appeal because Rothmund has failed, even under the more lenient standard, to identify evidence that would create a genuine dispute of material fact about Jenzack's predischarge knowledge.

The Bankruptcy Court granted summary judgment for Jenzack because of fraud relating to (1) the Mechanics' Lien and (2) the AE Receivable. The Bankruptcy Court held that Jenzack could not have known about the Mechanics' Lien or the AE Receivable predischarge. Rothmund argues that the Bankruptcy Court erred in determining that Jenzack lacked knowledge as to both instances of fraud. We disagree with Rothmund.

### 1. The Mechanics' Lien

Rothmund argues that before discharge, Jenzack possessed all the information that it needed to discover any alleged fraud regarding the Mechanics' Lien. According to Rothmund, Jenzack's years-long collection efforts, the investigative power that the First Charging Order granted, and the language that Jenzack used in the 2004 Motion prove that Jenzack knew or could have learned of Rothmund's alleged fraud predischarge.

But the First Charging Order did not include IBG—the company on whose behalf Rothmund filed the Mechanics' Lien. And during the bankruptcy proceeding, Rothmund represented that IBG was no longer operating and that all IBG's bank accounts were closed. App. 2126. Rothmund also filed the Mechanics' Lien, on behalf of IBG, over a year *after* receiving his discharge. Attachments to the Mechanics' Lien, which stated that

9

IBG last performed services under the pre-petition contract as recently as June 2019, included (1) a pre-petition contract and (2) a verification signed by Rothmund, under penalty of perjury, that he could assert the lien on behalf of IBG. Rothmund does not argue that he provided this information to Jenzack at any time, and Rothmund does not provide any reasonable explanation of what would have put Jenzack on notice of the facts underlying the Mechanics' Lien or how Jenzack could have learned this information.

Thus, Rothmund has failed to point to evidence sufficient to create a genuine dispute of material fact about Jenzack's predischarge knowledge of the Mechanics' Lien.

### 2. The AE Receivable

Rothmund also argues that Jenzack's collection efforts, the investigative power given under the First Charging Order, and the language used in Jenzack's 2004 Motion prove that Jenzack knew or could have learned of Rothmund's alleged fraud regarding the AE Receivable.

Jenzack made multiple requests for AE's financial documents before and after discharge, and Rothmund produced documents regarding AE to Jenzack before and after discharge. Rothmund does not argue that Jenzack failed to request documents likely to include information regarding the AE receivables. Rothmund does not argue that he produced or disclosed the AE Receivable to Jenzack, despite Jenzack's multiple requests for financial documents from AE. And Rothmund points to no evidence to suggest that Jenzack discovered the AE Receivable before obtaining the documents through an unrelated litigation, post-discharge.

10

Thus, Rothmund has failed to point to evidence sufficient to create a genuine dispute of material fact about Jenzack's predischarge knowledge of the AE Receivable.

## III. CONCLUSION

For these reasons, we will affirm the Bankruptcy Court's judgment.